IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

```
------------------------------------------------------- x
FEDERAL TRADE COMMISSION,                               :
600 Pennsylvania Avenue, N.W.                           :
Washington, D.C. 20580                                  :
                                                        :   Civil Action No: 1:05CV02179 (CKK)
        Plaintiff                                       :   Judge Colleen Kollar-Kotelly
                                                        :
 v.                                                     :
                                                        :
WARNER CHILCOTT HOLDINGS COMPANY                        :
III, LTD.                                               :
100 Enterprise Drive                                    :
Rockaway, N.J. 07866-2129                               :
                                                        :
WARNER CHILCOTT CORPORATION                             :
100 Enterprise Drive                                    :
Rockaway, N.J. 07866-2129                               :
                                                        :
WARNER CHILCOTT (US) INC.                               :
100 Enterprise Drive                                    :
Rockaway, N.J. 07866-2129                               :
                                                        :
WARNER CHILCOTT COMPANY, INC.                           :
Union Street, Km. 1.1                                   :
Fajardo, Puerto Rico 00738                              :
                                                        :
and                                                     :
                                                        :
BARR PHARMACEUTICALS, INC.                              :
2 Quaker Road, P.O. Box 2900                            :
Pomona, N.Y. 10970-0519                                 :
                                                        :
        Defendants                                      :
------------------------------------------------------- x
```

**WARNER CHILCOTT'S ANSWER TO THE FIRST AMENDED COMPLAINT**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc. and Warner Chilcott Company, Inc. (collectively,

"Warner Chilcott") answer the allegations of the Federal Trade Commission ("Plaintiff" or

"FTC") in its First Amended Complaint ("Complaint") as follows:

**PLAINTIFF'S ALLEGATION**

Plaintiff, the Federal Trade Commission (FTC), by its designated attorneys, petitions this Court, pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (2005), for a permanent injunction against defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc. (collectively "Warner Chilcott"), and Barr Pharmaceuticals, Inc. ("Barr"), to undo and prevent their unfair methods of competition in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (2005).

**ANSWER**

Warner Chilcott admits that Plaintiff purports to allege claims against Warner Chilcott, but denies each and every allegation above.  Warner Chilcott further denies that it has engaged in any unfair methods of competition and that Plaintiff is entitled to any relief whatsoever.

**PLAINTIFF'S ALLEGATION**

1.    This case involves a horizontal agreement not to compete between Warner Chilcott and Barr, two sellers of prescription drugs.  Warner Chilcott sells Ovcon 35 ("Ovcon"), an oral contraceptive used to prevent pregnancy.  Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

**ANSWER**

Warner Chilcott states that the first sentence in Paragraph 1 of the Complaint is a description of Plaintiff's claims to which no response is required.  To the extent a response is required, Warner Chilcott denies the allegations contained in Paragraph 1 of the Complaint, except admits that Warner Chilcott sells Ovcon 35, an oral contraceptive.

**PLAINTIFF'S ALLEGATION**

2.    Prior to the challenged agreement, Barr planned to compete with Warner Chilcott by selling Barr's lower-priced generic Ovcon once Barr received FDA approval.  Both Warner

Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher-priced branded Ovcon's sales, by capturing approximately 50 percent of Ovcon's business in the first year alone.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint, except denies that Warner Chilcott predicted a Barr generic would reduce Warner Chilcott's Ovcon sales by capturing 50 percent of the Ovcon business in the first year alone.

**PLAINTIFF'S ALLEGATION**

3.     To forestall this competitive threat and to protect its Ovcon sales, Warner Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the United States for five years.  In exchange for Barr's agreement to keep its generic Ovcon off the market, Warner Chilcott paid Barr $20 million.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 3 of the Complaint.

**PLAINTIFF'S ALLEGATION**

4.     The effect of this anticompetitive agreement between Warner Chilcott and Barr has been to deprive purchasers of the choice of a lower-cost generic alternative to Warner Chilcott's higher-priced branded Ovcon.

**ANSWER**

        Warner Chilcott denies each and every allegation contained in Paragraph 4 of the Complaint.

**PLAINTIFF'S ALLEGATION**

    5.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 45(a) and 53(b) (2005), and 28 U.S.C. §§ 1331, 1337(a), and 1345 (2005).

**ANSWER**

        Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 5 of the Complaint.

**PLAINTIFF'S ALLEGATION**

    6.    This Court has personal jurisdiction over each defendant pursuant to 15 U.S.C. § 53(b) (2005), because each defendant has the requisite constitutional contacts with the United States of America, and because each defendant has engaged in an activity that violates provisions of law enforced by the Federal Trade Commission.

**ANSWER**

        Paragraph 6 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, except denies that it has engaged in any activity that violates any provisions of law enforced by the Federal Trade Commission.

**PLAINTIFF'S ALLEGATION**

7.      Venue in this district is proper under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b), (c), (d) (2005), because each defendant resides or transacts business in the District of Columbia, or is an alien.

**ANSWER**

Paragraph 7 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, except admits that Ovcon is sold in the District of Columbia.

**PLAINTIFF'S ALLEGATION**

8.      The defendants' general business practices, and the unfair methods of competition alleged herein, are "in or affecting commerce" within the meaning of Section 5 of the FTC Act, 15 U.S.C. § 44 (2005).

**ANSWER**

Paragraph 8 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, except denies that Warner Chilcott has engaged in any unfair methods of competition.

**PLAINTIFF'S ALLEGATION**

9.      Each defendant is, and at all times relevant herein has been, a corporation, as "corporation" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 (2005).

**ANSWER**

Paragraph 9 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 9 of

the Complaint.

**PLAINTIFF'S ALLEGATION**

10.     Plaintiff FTC is an administrative agency of the United States government,
established, organized, and existing pursuant to the FTC Act, 15 U.S.C. §§ 41 *et seq.* (2005),
with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.  The FTC
is vested with authority and responsibility for enforcing, *inter alia*, Section 5 of the FTC Act, 15
U.S.C. § 45 (2005), and is authorized under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)
(2005), to initiate court proceedings to enjoin violations of any law the FTC enforces.

**ANSWER**

Paragraph 10 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 10

of the Complaint.

**PLAINTIFF'S ALLEGATION**

11.     Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-
profit company organized, existing, and doing business under and by virtue of the laws of
Bermuda, with its office and principal place of business located at 100 Enterprise Drive,
Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 11 of the

Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned,

for-profit enterprise organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12

Bermuda.


**PLAINTIFF'S ALLEGATION**

12.    Warner Chilcott Holdings Company III, Ltd., through its direct and indirect
subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of
pharmaceutical products in the United States, including Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 12 of the

Complaint, except admits that subsidiaries of Warner Chilcott Holdings Company III, Ltd. are

engaged in the discovery, development, manufacturing, and distribution of pharmaceutical

products in the United States, including Ovcon.


**PLAINTIFF'S ALLEGATION**

13.    Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of
Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner
Chilcott (U.S.) Inc. Warner Chilcott Corporation is organized, existing, and doing business under
and by virtue of the laws of the State of Delaware, with its office and principal place of business
located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 13 of the

Complaint, except admits that Warner Chilcott Corporation is a wholly-owned indirect

subsidiary of Warner Chilcott Holdings Company III, Ltd.  Warner Chilcott further admits that

Warner Chilcott Corporation is organized, existing, and doing business under and by virtue of

the laws of the State of Delaware, with its office and principal place of business located at 100

Enterprise Drive, Rockaway, New Jersey 07866-2129.

## PLAINTIFF'S ALLEGATION

14.    Defendant Warner Chilcott (U.S.) Inc., is a wholly-owned subsidiary of Warner Chilcott Corporation.  Warner Chilcott (U.S.) Inc., is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

## ANSWER

Warner Chilcott admits the allegations contained in Paragraph 14 of the

Complaint.

## PLAINTIFF'S ALLEGATION

15.    Defendant Warner Chilcott Company, Inc., a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

## ANSWER

Warner Chilcott admits the allegations contained in Paragraph 15 of the

Complaint.

## PLAINTIFF'S ALLEGATION

16.    In the twelve months ending September 30, 2004, Warner Chilcott had net revenues of approximately $490.2 million.  During that same period, Warner Chilcott's gross profit margin on product net sales was approximately 89 percent.

**ANSWER**

   Warner Chilcott denies the allegations contained in Paragraph 16 of the

Complaint, except admits that in the twelve months ending September 30, 2004, Warner

Chilcott's gross margin on product net sales was approximately 89 percent.

**PLAINTIFF'S ALLEGATION**

   17. Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware.  Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

**ANSWER**

   Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 17 of the Complaint.

**PLAINTIFF'S ALLEGATION**

   18. Barr is engaged in the business of, among other things, developing, manufacturing, marketing, and distributing generic oral contraceptive products.  In the twelve months ending June 30, 2004, Barr had net revenues of approximately $349 million and net income of approximately $123 million.

**ANSWER**

   Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 18 of the Complaint, except admits that Barr is

engaged in the business of, among other things, developing, manufacturing, marketing, and

distributing generic oral contraceptives.

**PLAINTIFF'S ALLEGATION**

     19.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*., as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (Hatch-Waxman Act) and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs, while maintaining incentives for pharmaceutical companies to invest in developing new drugs.

**ANSWER**

     Paragraph 19 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), 21 U.S.C. § 355(j) (2005), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, 35 U.S.C. § 271(e) (2005), have procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

     20.    A company seeking FDA approval to market a new drug (i.e., a branded drug) must file a New Drug Application (NDA) demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005).

**ANSWER**

     Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

21.    An "AB-rated" generic drug is one that the FDA has determined to be bioequivalent to a branded drug. A generic drug is considered bioequivalent to a branded drug if it contains the same active pharmaceutical ingredient as the branded drug, and if there is no significant difference in the formulation, quality, and effectiveness of the two drugs. *See* 21 U.S.C. § 355(j)(8)(B) (2005).

**ANSWER**

Paragraph 21 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals, but denies that the Hatch-Waxman Act is applicable to this case.

**PLAINTIFF'S ALLEGATION**

22.    A company seeking to market an "AB-rated" generic version of a branded drug may file an Abbreviated New Drug Application (ANDA) with the FDA. 21 U.S.C. § 355(j) (2005).

**ANSWER**

Paragraph 22 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has procedures concerning generic pharmaceuticals.

**PLAINTIFF'S ALLEGATION**

23.    FDA approval of an ANDA takes, on average, about 18 months, although the approval process can take two years or more.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint, except admits that FDA approval of an ANDA may take more than two years.

**PLAINTIFF'S ALLEGATION**

24.    Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, unless a physician directs, or the patient requests, otherwise.  These state laws facilitate substitution of the lower-priced AB-rated generic drugs for the higher-priced branded drugs.

**ANSWER**

Paragraph 24 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 24 of the Complaint.

**PLAINTIFF'S ALLEGATION**

25.    Many third party payers of prescription drugs (e.g., health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of AB-rated generic drugs for their branded counterparts, when an AB-rated generic is available.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 25 of the Complaint.

**PLAINTIFF'S ALLEGATION**

26.     As a result of these lower prices and the ease of substitution, many consumers routinely switch from a branded drug to an AB-rated generic drug upon its introduction. Consequently, AB-rated generic drugs, after their introduction, typically promptly capture a significant share of their branded counterparts' sales, causing a significant reduction of the branded drug's unit and dollar sales.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 26 of the Complaint.

**PLAINTIFF'S ALLEGATION**

27.     Competition from generic drugs generates large savings for consumers.  A 1998 Congressional Budget Office Report estimates that in 1994 alone, purchasers saved $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of the equivalent brand name drugs.  A 2004 FDA study calculates that patients could reduce the daily costs of their medications by more than 50 percent by purchasing generic drugs when available.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, except denies that the Congressional Budget Office Report and the FDA study referenced in Paragraph 27 of the Complaint are applicable to this case.

**PLAINTIFF'S ALLEGATION**

28.     Ovcon was originally approved by the FDA in 1976, and it is not subject to patent protection.  Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company on January 26, 2000.  As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.

**ANSWER**

   Warner Chilcott admits the allegations contained in Paragraph 28 of the

Complaint, except denies that Bristol-Myers Squibb Company has ever adequately supplied

Ovcon to Warner Chilcott, and further denies that Bristol-Myers Squibb Company has continued

to supply Ovcon to Warner Chilcott.


**PLAINTIFF'S ALLEGATION**

  29.  Ovcon's net dollar sales have more than doubled since 2000, even as Warner
Chilcott has raised Ovcon's price.

**ANSWER**

   Warner Chilcott denies the allegations contained in Paragraph 29 of the

Complaint, except admits that Ovcon's net sales have more than doubled since 2000, and further

admits that Ovcon's price has risen.


**PLAINTIFF'S ALLEGATION**

  30.  Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing
products.

**ANSWER**

   Warner Chilcott admits the allegations contained in Paragraph 30 of the

Complaint.


**PLAINTIFF'S ALLEGATION**

  31.  Warner Chilcott sells Ovcon at a price substantially above Warner Chilcott's cost
of acquiring the product.

**ANSWER**

    Warner Chilcott denies the allegations contained in Paragraph 31 of the

Complaint, except admits that Warner Chilcott sells Ovcon at a price above its cost.

**PLAINTIFF'S ALLEGATION**

   32. Ovcon is highly profitable for Warner Chilcott.  For the twelve months ending
September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**ANSWER**

    Warner Chilcott denies the allegations contained in Paragraph 32 of the

Complaint, except admits that Warner Chilcott earns a profit on its Ovcon sales, and further

admits that for the twelve months ending September 30, 2004, Warner Chilcott's net sales of

Ovcon were approximately $71.5 million.

**PLAINTIFF'S ALLEGATION**

   33. In September 2001, Barr filed an ANDA with the FDA for approval to
manufacture and sell an AB-rated generic version of Ovcon.

**ANSWER**

    Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 33 of the Complaint.

**PLAINTIFF'S ALLEGATION**

   34. In January 2003, Barr publicly announced its intention to market generic Ovcon
by the end of that year.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 34 of the Complaint.

**PLAINTIFF'S ALLEGATION**

35.    Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 35 of the Complaint.

**PLAINTIFF'S ALLEGATION**

36.    Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 36 of the Complaint.

**PLAINTIFF'S ALLEGATION**

37.    Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 37 of the Complaint.

**PLAINTIFF'S ALLEGATION**

38.    Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 38 of the Complaint.

**PLAINTIFF'S ALLEGATION**

39.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon.  Prescriptions for Ovcon Chewable could not be filled at the pharmacy with a generic Ovcon product (absent express approval of the patient's physician), because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 39 of the Complaint, except admits that Warner Chilcott has developed a new, innovative, patented product, Ovcon Chewable.

**PLAINTIFF'S ALLEGATION**

40.    By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon revenues – by converting customers to Ovcon Chewable before generic Ovcon entry – was in jeopardy.  Barr's generic Ovcon entry appeared imminent, and Ovcon Chewable had not obtained FDA approval.

**ANSWER**

   Warner Chilcott denies the allegations contained in Paragraph 40 of the

Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.

**PLAINTIFF'S ALLEGATION**

  41. In May 2003, Warner Chilcott's chief financial officer warned the company's
Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 41 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

  42. By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry
could occur as early as September of that year.

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 42 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

  43. In August 2003, Warner Chilcott and Barr discussed a possible business
arrangement under which Barr would agree to refrain from competing in the United States with
its generic Ovcon product.

**ANSWER**

   Warner Chilcott denies each and every allegation contained in Paragraph 43 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

44.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent. According to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 44 of the

Complaint, except admits that on September 10, 2003, Warner Chilcott and Barr executed a

letter of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms

thereof.

**PLAINTIFF'S ALLEGATION**

45.    In February 2004, FTC staff notified Warner Chilcott and Barr that it intended to investigate the non-compete agreement outlined in the defendants' letter of intent because of its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 45 of the

Complaint, except admits that in February 2004 the FTC Healthcare Division advised Warner

Chilcott that it intended to investigate the Ovcon transactions outlined in the letter of intent

between Warner Chilcott and Barr.

**PLAINTIFF'S ALLEGATION**

46.    On March 24, 2004, the defendants signed their Final Agreement implementing the letter of intent.  Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 46 of the

Complaint, except admits that on March 24, 2004 Warner Chilcott and Barr executed an option

agreement implementing the terms of the letter of intent, and further admits that Warner Chilcott

paid Barr $1 million in consideration for the option. Warner Chilcott respectfully refers the

Court to the option agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

      47.    Under the Final Agreement, within 45 days after the FDA approved Barr's
generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure
Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or
through a licensee, for five years. The Final Agreement referred to this arrangement as Warner
Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 47 of the

Complaint, except admits that it entered into an option agreement with Barr. Warner Chilcott

respectfully refers the Court to the agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

      48.    In addition, the Final Agreement gave Warner Chilcott the ability to purchase
Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply
from Barr would arise, however, only after Barr received final FDA approval for its generic
Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr
went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon
supply needs would immediately be drastically reduced.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 48 of the

Complaint, except admits that Warner Chilcott and Barr entered into a supply agreement, and

further admits that Barr could not supply Warner Chilcott with Ovcon prior to receiving FDA

approval.  Warner Chilcott respectfully refers the Court to the agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

49.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market
generic Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 49 of the Complaint.

**PLAINTIFF'S ALLEGATION**

50.    Upon receiving final FDA approval for its generic Ovcon ANDA, Barr had the
desire, intent, and capability to market generic Ovcon in the United States.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 50 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon in the United States upon receiving final FDA

approval.

**PLAINTIFF'S ALLEGATION**

51.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon
if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon if Warner

Chilcott did not exercise its option, subject to certain risks and uncertainties associated with making generic Ovcon commercially available.

**PLAINTIFF'S ALLEGATION**

52.    On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 52 of the Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further admits that Warner Chilcott paid Barr $19 million upon the exercise of the option.

**PLAINTIFF'S ALLEGATION**

53.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co., until about May 2005.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 53 of the Complaint, except admits that product under Barr's ANDA could not be sold immediately upon FDA approval, and further admits that Warner Chilcott purchased Ovcon from BMS.

**PLAINTIFF'S ALLEGATION**

54.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that until approximately May 2009 Barr may only supply Warner

Chilcott with Ovcon under its ANDA.

**PLAINTIFF'S ALLEGATION**

      55.    Entry of Barr's generic Ovcon into the United States would have quickly and
significantly reduced the sales of Warner Chilcott's branded Ovcon, and led to a significant
reduction in the average price purchasers paid for Ovcon products.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 55 of the Complaint, except denies that entry

of a Barr generic Ovcon would have led to a significant reduction in the average price purchasers

paid for Ovcon products.

**PLAINTIFF'S ALLEGATION**

      56.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

**ANSWER**

        Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 56 of the Complaint.

**PLAINTIFF'S ALLEGATION**

      57.    As of the date of this complaint, Barr remains the only company that has received
approval from the FDA to make an AB-rated generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 57 of the Complaint.

**PLAINTIFF'S ALLEGATION**

58.    Entry of Barr's generic Ovcon would give consumers the choice between branded Ovcon and Barr's lower-priced generic Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 58 of the Complaint.

**PLAINTIFF'S ALLEGATION**

59.    Had Barr entered the United States with its generic Ovcon, many consumers would have purchased Barr's lower-priced, therapeutically-equivalent generic drug instead of Warner Chilcott's higher-priced branded drug.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 59 of the Complaint.

**PLAINTIFF'S ALLEGATION**

60.    The agreement not to compete, which prevents Barr's generic Ovcon entry for five years, deprives United States consumers of the choice of purchasing Barr's lower-priced generic Ovcon instead of Warner Chilcott's higher-priced branded Ovcon.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 60 of the Complaint.

**PLAINTIFF'S ALLEGATION**

61.    Entry of Barr's generic Ovcon would benefit consumers.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 61 of the Complaint.

**PLAINTIFF'S ALLEGATION**

62.    The defendants' horizontal agreement not to compete, which prevents Barr's AB-rated generic Ovcon entry for five years, on its face eliminates competition and has no plausible procompetitive justification.  The agreement, therefore, is a naked restraint of trade.

**ANSWER**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 62 of the Complaint.

**PLAINTIFF'S ALLEGATION**

63.    By preventing entry of Barr's generic Ovcon into the United States for five years, the agreement not to compete limits consumer choice and impedes the ordinary give and take of the marketplace.  The likely competitive harm from defendants' agreement not to compete is readily apparent from the nature of the restraint itself.

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 63 of the Complaint.

**PLAINTIFF'S ALLEGATION**

64.    The defendants' horizontal agreement not to compete, which prevents entry of Barr's generic Ovcon for five years, is not ancillary to any procompetitive undertaking.

      a.    Preventing competition from Barr's generic Ovcon for five years is not subordinate to any procompetitive undertaking, but rather is the primary purpose of defendants' anticompetitive agreement.

      b.    Preventing competition from Barr's generic Ovcon for five years is not reasonably necessary to accomplish any undertaking that enhances competition.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 64 of the Complaint, including sub-parts a. and b.

**PLAINTIFF'S ALLEGATION**

65.    The defendants could have achieved any purported procompetitive benefits of their agreement through means appreciably less restrictive of competition than preventing competition from Barr's generic Ovcon for five years.

**ANSWER**

Paragraph 65 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 65 of the Complaint.

**PLAINTIFF'S ALLEGATION**

66.    Even under a broader inquiry, the agreement not to compete is anticompetitive. The purpose and effect of this agreement is to prevent Barr – which has the only FDA-approved generic Ovcon product – from offering consumers a lower-priced, therapeutically equivalent alternative to Warner Chilcott's higher-priced branded Ovcon.  Consequently, as a result of defendants' agreement not to compete, an agreement that lacks any countervailing efficiency-enhancing justification, many purchasers – including consumers, insurers, pharmacies, wholesalers, government agencies, managed care organizations, and others – are paying higher

prices in the market for Ovcon and its AB-rated generic equivalents than would otherwise prevail absent the agreement not to compete.

**ANSWER**

Paragraph 66 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 66 of the Complaint.

**PLAINTIFF'S ALLEGATION**

67.     By entering into this illegal horizontal agreement not to compete, defendants Warner Chilcott and Barr have engaged, and are engaging, in unfair methods of competition in or affecting commerce, in violation of Section 5 of the FTC Act.  15 U.S.C. § 45 (2005).

**ANSWER**

Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 67 of the Complaint.

**PLAINTIFF'S ALLEGATION**

68.     Section 13(b) of the FTC Act empowers this Court to issue a permanent injunction against violations of the FTC Act and, in the exercise of its equitable jurisdiction, to order ancillary equitable relief to remedy the injury caused by defendants' violations.

**ANSWER**

Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 68 of the Complaint.

**Prayer for Relief**

**PLAINTIFF'S ALLEGATION**

WHEREFORE, the FTC requests that this Court, as authorized by 15 U.S.C. § 53(b) (2005), 15 U.S.C. § 26 (2005), and pursuant to its own equitable powers, enter final judgment against defendants, declaring, ordering, and adjudging:

   1. That the agreement between defendants Warner Chilcott and Barr preventing competition from Barr's generic Ovcon drug product for five years violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (2005);

   2. That defendants Warner Chilcott and Barr are permanently enjoined from maintaining or enforcing their agreement not to compete, which prevents competition from Barr's generic Ovcon drug product, and from engaging in similar and related conduct; and

   3. That the Court grant such other equitable relief as the Court finds necessary to redress and prevent recurrence of defendants' violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged herein.

**ANSWER**

   Wherefore, Warner Chilcott denies that Plaintiff is entitled to any relief whatsoever and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees as may be allowed by law, and such further relief as the Court deems appropriate. Furthermore, Warner Chilcott denies each and every allegation contained in the Complaint not specifically admitted herein.

**Affirmative Defenses**

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiff.

**First Affirmative Defense**
**(Failure to State a Claim)**

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

**Second Affirmative Defense**
**(Laches)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**Third Affirmative Defense**
**(Estoppel)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

**Fourth Affirmative Defense**
**(Waiver)**

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**Fifth Affirmative Defense**
**(Justification)**

Plaintiff's claims are barred, in whole on in part, because any conduct engaged in by Warner Chilcott has been reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

**Sixth Affirmative Defense**
**(Preservation of Business)**

Plaintiff's claims are barred, in whole on in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

**Seventh Affirmative Defense**
**(No Injury to Competition)**

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

**Eighth Affirmative Defense**
**(Pro-Competitive Effects)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

**Ninth Affirmative Defense**
**(No Consumer Harm)**

Plaintiff's claims are barred, in whole or in part, because none of Warner

Chilcott's actions have harmed consumers.

**Tenth Affirmative Defense**
**(No Adverse Effect on the Public Interest)**

Plaintiff's claims are barred, in whole or in part, because none of Warner

Chilcott's actions have adversely affected, or caused injury to, the public interest.

**Eleventh Affirmative Defense**
**(No Knowledge or Intent)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no

knowledge, intention or belief that its actions, if any, might illegally restrain trade.  Further,

Warner Chilcott could not have known that its actions might illegally restrain trade.

**Twelfth Affirmative Defense**
**(No Willful or Flagrant Act)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not

engage in any willful, flagrant or unconscionable act.

## Thirteenth Affirmative Defense
### (Good Faith Reliance)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

## Fourteenth Affirmative Defense
### (No Notice)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

## Fifteenth Affirmative Defense
### (No Concealment)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## Sixteenth Affirmative Defense
### (Failure to Identify Appropriate Markets)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

## Seventeenth Affirmative Defense
## (No Market Power)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has no market power and Plaintiff has failed to allege any market power.

## Eighteenth Affirmative Defense
## (Improper Remedy)

Plaintiff's claims are barred, in whole or in part, because Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (2005), does not permit the FTC to seek a permanent injunction in federal court in this matter.

## Nineteenth Affirmative Defense
## (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

**Prayer for Relief**

Wherefore, Warner Chilcott prays as follows:

1.      That the Court enter judgment for Warner Chilcott;

2.      That the Court award Warner Chilcott reasonable costs and expenses

including but not limited to, attorneys' fees and costs of suit, and such other and further relief as

may be appropriate.


December 19, 2005                          Respectfully submitted,


                            By:      /s/
                                    _____
                                    Kevin J. Arquit, D.C. Bar #438511
                                    Charles E. Koob, *pro hac vice* pending
                                    SIMPSON THACHER & BARTLETT LLP
                                    425 Lexington Avenue
                                    New York, New York 10017
                                    (212) 455-2000

                                    *Counsel for Warner Chilcott Defendants*