# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>Plaintiff,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD.<br>100 Enterprise Drive<br>Rockaway, N.J. 07866-2129<br><br>WARNER CHILCOTT CORPORATION<br>100 Enterprise Drive<br>Rockaway, N.J. 07866-2129<br><br>WARNER CHILCOTT (US) INC.<br>100 Enterprise Drive<br>Rockaway, N.J. 07866-2129<br><br>WARNER CHILCOTT COMPANY, INC.<br>Union Street, Km. 1.1<br>Fajardo, Puerto Rico 00738<br><br>and<br><br>BARR PHARMACEUTICALS, INC.<br>2 Quaker Road, P.O. Box 2900<br>Pomona, N.Y. 10970-0519<br><br>Defendants. | Civil Action No: 1:05-CV-02179-CKK<br><br><br>Judge Colleen Kollar-Kotelly |

## BARR PHARMACEUTICALS' ANSWER TO
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the First

Amended Complaint ("Complaint"). Barr denies it has engaged or is engaging in any unfair

method of competition in or affecting commerce in violation of Section 5(a) of the Federal Trade

Commission Act, 15 U.S.C. § 45(a) (2005).   Barr further responds to each paragraph of the

Complaint as set forth below. Any allegation in the Complaint not specifically addressed below

is hereby denied.

1.      This case involves a horizontal agreement not to compete between Warner
Chilcott and Barr, two sellers of prescription drugs.  Warner Chilcott sells Ovcon 35 ("Ovcon"),
an oral contraceptive used to prevent pregnancy.  Barr is the only company approved by the
United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in
competition with Warner Chilcott's branded Ovcon.

Barr admits Warner Chilcott sells Ovcon 35 ("Ovcon"), an oral contraceptive

used to prevent pregnancy.   Barr denies this case involves a horizontal agreement not to

compete.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 1.

2.      Prior to the challenged agreement, Barr planned to compete with Warner
Chilcott by selling Barr's lower-priced generic Ovcon once Barr received FDA approval.  Both
Warner Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market
would reduce Warner Chilcott's higher-priced branded Ovcon's sales, by capturing
approximately 50 percent of Ovcon's business in the first year alone.

Barr denies each and every allegation in Paragraph 2 of the Complaint relating to

Barr, and lacks knowledge or information sufficient to form a belief as to the truth of allegations

relating to Warner Chilcott.

3.      To forestall this competitive threat and to protect its Ovcon sales, Warner
Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the
United States for five years.  In exchange for Barr's agreement to keep its generic Ovcon off the
market, Warner Chilcott paid Barr $20 million.

Barr denies each and every allegation contained in Paragraph 3 of the Complaint.

4.    The effect of this anticompetitive agreement between Warner Chilcott and Barr has been to deprive purchasers of the choice of a lower-cost generic alternative to Warner Chilcott's higher-priced branded Ovcon.

Barr denies each and every allegation contained in Paragraph 4 of the Complaint.

5.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 45(a) and 53(b) (2005), and 28 U.S.C. §§ 1331, 1337(a), and 1345 (2005).

Paragraph 5 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr denies each and every allegation contained in Paragraph 5 of the Complaint.

6.    This Court has personal jurisdiction over each defendant pursuant to 15 U.S.C. § 53(b) (2005), because each defendant has the requisite constitutional contacts with the United States of America, and because each defendant has engaged in an activity that violates provisions of law enforced by the Federal Trade Commission.

Paragraph 6 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr denies that it has engaged in any activity that violates any provisions of law enforced by the FTC.

7.    Venue in this district is proper under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b), (c), (d) (2005), because each defendant resides or transacts business in the District of Columbia, or is an alien.

Paragraph 7 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 7 of the Complaint.

8.    The defendants' general business practices, and the unfair methods of competition alleged herein, are "in or affecting commerce" within the meaning of Section 5 of the FTC Act, 15 U.S.C. § 44 (2005).

Paragraph 8 of the Complaint contains legal conclusions to which no response is required.    To the extent a response is required, Barr denies that it has engaged in any unfair methods of competition.

9.    Each defendant is, and at all times relevant herein has been, a corporation, as "corporation" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 (2005).

Paragraph 9 of the Complaint contains legal conclusions to which no response is required.

10.    Plaintiff FTC is an administrative agency of the United States government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. §§ 41 *et seq.* (2005), with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.    The FTC is vested with authority and responsibility for enforcing, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45 (2005), and is authorized under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (2005), to initiate court proceedings to enjoin violations of any law the FTC enforces.

Paragraph 10 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that the FTC is an administrative agency of the United States government.

11.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 11 of the Complaint.

12.    Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products in the United States, including Ovcon.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 12 of the Complaint.

4

13.    Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 13 of the Complaint.

14.    Defendant Warner Chilcott (U.S.) Inc., is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc., is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 14 of the Complaint.

15.    Defendant Warner Chilcott Company, Inc., a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 15 of the Complaint.

16.    In the twelve months ending September 30, 2004, Warner Chilcott had net revenues of approximately $490.2 million. During that same period, Warner Chilcott's gross profit margin on product net sales was approximately 89 percent.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 16 of the Complaint.

17.    Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware. Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

Barr admits it is a corporation organized under the laws of the State of Delaware, but denies the remaining allegations contained in Paragraph 17 of the Complaint.

18.    Barr is engaged in the business of, among other things, developing, manufacturing, marketing, and distributing generic oral contraceptive products.  In the twelve months ending June 30, 2004, Barr had net revenues of approximately $349 million and net income of approximately $123 million.

Barr admits it is engaged in the business of, among other things, developing, manufacturing, marketing, and distributing generic oral contraceptive products.  Barr denies the remaining allegations contained in Paragraph 18 of the Complaint.

19.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (Hatch-Waxman Act) and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs, while maintaining incentives for pharmaceutical companies to invest in developing new drugs.

Paragraph 19 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act") and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establish certain procedures relating to generic pharmaceuticals.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 of the Complaint.

20.    A company seeking FDA approval to market a new drug (i.e., a branded drug) must file a New Drug Application (NDA) demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005).

Paragraph 20 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that, among other things, a drug manufacturer must file a New Drug Application with the FDA and demonstrate that a new drug is safe and effective for its intended use.

21.    An "AB-rated" generic drug is one that the FDA has determined to be bioequivalent to a branded drug. A generic drug is considered bioequivalent to a branded drug if it contains the same active pharmaceutical ingredient as the branded drug, and if there is no significant difference in the formulation, quality, and effectiveness of the two drugs. *See* 21 U.S.C. § 355(j)(8)(B) (2005).

Paragraph 21 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that 21 U.S.C. § 355(j)(8)(B) (2005) contains provisions defining "AB-rated" generic drugs.

22.    A company seeking to market an "AB-rated" generic version of a branded drug may file an Abbreviated New Drug Application (ANDA) with the FDA. 21 U.S.C. § 355(j) (2005).

Paragraph 22 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that a company seeking to market an "AB-rated" pharmaceutical may file an ANDA with the FDA.

23.    FDA approval of an ANDA takes, on average, about 18 months, although the approval process can take two years or more.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 23 of the Complaint.

24.    Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, unless a physician directs, or the patient requests, otherwise.  These state laws facilitate substitution of the lower-priced AB-rated generic drugs for the higher-priced branded drugs.

Paragraph 24 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, Barr admits that in some states and under certain circumstances a pharmacist may dispense an AB-rated generic drug when presented with a prescription for its branded equivalent, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24 of the Complaint.

25.     Many third party payers of prescription drugs (e.g., health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of AB-rated generic drugs for their branded counterparts, when an AB-rated generic is available.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 25 of the Complaint.

26.     As a result of these lower prices and the ease of substitution, many consumers routinely switch from a branded drug to an AB-rated generic drug upon its introduction.  Consequently, AB-rated generic drugs, after their introduction, typically promptly capture a significant share of their branded counterparts' sales, causing a significant reduction of the branded drug's unit and dollar sales.

Barr admits that in many instances generic drugs may capture significant sales, but that each drug must be considered individually to observe sales trends.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 of the Complaint.

27.     Competition from generic drugs generates large savings for consumers.  A 1998 Congressional Budget Office Report estimates that in 1994 alone, purchasers saved $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of the equivalent brand name drugs.  A 2004 FDA study calculates that patients could reduce the daily costs of their medications by more than 50 percent by purchasing generic drugs when available.

Barr admits that generic drugs can generate large savings.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Ovcon was originally approved by the FDA in 1976, and it is not subject to patent protection.  Warner Chilcott acquired Ovcon from Bristol-Myers Squibb Company on January 26, 2000.  As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.

Barr admits that it is unaware of any claims of patent protection on Ovcon.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 29 of the Complaint.

30.     Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 30 of the Complaint.

31.     Warner Chilcott sells Ovcon at a price substantially above Warner Chilcott's cost of acquiring the product.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 31 of the Complaint.

32.     Ovcon is highly profitable for Warner Chilcott.  For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 32 of the Complaint.

33.     In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.

Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.  Barr denies the remaining allegations contained in Paragraph 33 of the Complaint.

34.     In January 2003, Barr publicly announced its intention to market generic Ovcon by the end of that year.

Barr denies the allegations contained in Paragraph 34, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

35.    Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon.

Barr denies the allegations contained in Paragraph 35 of the Complaint.

36.    Barr projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

Barr admits that it made projections regarding the sales of a generic Ovcon product.  Barr denies the remaining allegations of Paragraph 36 of the Complaint.

37.    Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

38.    Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescriptions within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.

39.    Warner Chilcott had planned to protect its Ovcon revenues from generic competition by introducing a chewable form of the product (Ovcon Chewable) before generic Ovcon entry occurred.  Warner Chilcott's strategy was to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon.  Prescriptions for Ovcon Chewable could not be filled at the pharmacy with a generic Ovcon product (absent express approval of the patient's physician), because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

40.     By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon revenues – by converting customers to Ovcon Chewable before generic Ovcon entry – was in jeopardy.  Barr's generic Ovcon entry appeared imminent, and Ovcon Chewable had not obtained FDA approval.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 40 of the Complaint.

41.     In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 41 of the Complaint.

42.     By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 42 of the Complaint.

43.     In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

Barr denies the allegations contained in Paragraph 43 of the Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott discussed a number of possible business transactions.

44.     On September 10, 2003, Warner Chilcott and Barr executed a letter of intent.  According to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

Barr denies each and every allegation contained in Paragraph 44 of the Complaint, except admits that on September 10, 2003, Barr and Warner Chilcott executed a letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into a five year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

45.    In February 2004, FTC staff notified Warner Chilcott and Barr that it intended to investigate the non-compete agreement outlined in the defendants' letter of intent because of its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon.

Barr denies each and every allegation contained in Paragraph 45 of the Complaint, except admits that in February 2004, FTC staff advised Barr that it intended to investigate the Ovcon transactions outlined in the letter of intent between Warner Chilcott and Barr.

46.    On March 24, 2004, the defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an option agreement implementing the terms of the parties' letter of intent, and further admits that Barr was paid $1 million in consideration for the option by Warner Chilcott.

47.    Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

Barr denies each and every allegation contained in Paragraph 47 of the Complaint, except admits that Warner Chilcott exercised its option to a five-year exclusive license to Barr's Ovcon ANDA in May 2004.

48.    In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

Barr denies each and every allegation contained in Paragraph 48 of the Complaint, except admits that Barr and Warner Chilcott entered into a supply agreement with specified payment terms, and further admits that Barr could not supply Warner Chilcott with generic Ovcon under its ANDA prior to receiving FDA approval.

49.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon.

Barr admits the allegations of Paragraph 49 of the Complaint.

50.    Upon receiving final FDA approval for its generic Ovcon ANDA, Barr had the desire, intent, and capability to market generic Ovcon in the United States.

Barr denies each and every allegation contained in Paragraph 50 of the Complaint.

51.    On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.

Barr admits that, in April 2004, it publicly contemplated launching a generic version of Ovcon if Warner Chilcott chose not to exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

13

52.    On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

Barr admits that on May 6, 2004 Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the Final Agreement.

53.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co., until about May 2005.

Barr admits Warner Chilcott began purchasing Ovcon from Barr in May 2005. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 53 of the Complaint.

54.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

Barr denies each and every allegation contained in Paragraph 54 of the Complaint, except admits that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.

55.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon, and led to a significant reduction in the average price purchasers paid for Ovcon products.

Barr denies each and every allegation of Paragraph 55 of the Complaint.

56.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

Barr admits it has not sold generic Ovcon in the United States. Barr denies the remaining allegations contained in Paragraph 56 of the Complaint.

57.    As of the date of this complaint, Barr remains the only company that has received approval from the FDA to make an AB-rated generic version of Ovcon.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 57 of the Complaint.

58.    Entry of Barr's generic Ovcon would give consumers the choice between branded Ovcon and Barr's lower-priced generic Ovcon.

Barr denies each and every allegation contained in Paragraph 58 of the Complaint.

59.    Had Barr entered the United States with its generic Ovcon, many consumers would have purchased Barr's lower-priced, therapeutically-equivalent generic drug instead of Warner Chilcott's higher-priced branded drug.

Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 59 of the Complaint.

60.    The agreement not to compete, which prevents Barr's generic Ovcon entry for five years, deprives United States consumers of the choice of purchasing Barr's lower-priced generic Ovcon instead of Warner Chilcott's higher-priced branded Ovcon.

Barr denies each and every allegation contained in Paragraph 60 of the Complaint.

61.    Entry of Barr's generic Ovcon would benefit consumers.

Barr denies the allegations of Paragraph 61 of the Complaint.

62.    The defendants' horizontal agreement not to compete, which prevents Barr's AB-rated generic Ovcon entry for five years on its face eliminates competition and has no plausible procompetitive justification. The agreement, therefore, is a naked restraint of trade.

Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is required, Barr denies each and every allegation contained in Paragraph 62 of the Complaint.

63.    By preventing entry of Barr's generic Ovcon into the United States for five years, the agreement not to compete limits consumer choice and impedes the ordinary give and take of the marketplace. The likely competitive harm from defendants' agreement not to compete is readily apparent from the nature of the restraint itself.

Barr denies each and every allegation contained in Paragraph 63 of the Complaint.

64.    The defendants' horizontal agreement not to compete, which prevents entry of Barr's generic Ovcon for five years, is not ancillary to any procompetitive undertaking.

a.    Preventing competition from Barr's generic Ovcon for five years is not subordinate to any procompetitive undertaking, but rather is the primary purpose of defendants' anticompetitive agreement.

b.    Preventing competition from Barr's generic Ovcon for five years is not reasonably necessary to accomplish any undertaking that enhances competition.

Barr denies each and every allegation contained in Paragraph 64 of the Complaint, including sub-parts a. and b.

65.    The defendants could have achieved any purported procompetitive benefits of their agreement through means appreciably less restrictive of competition than preventing competition from Barr's generic Ovcon for five years.

Barr denies each and every allegation contained in paragraph 65 of the Complaint.

66.    Even under a broader inquiry, the agreement not to compete is anticompetitive. The purpose and effect of this agreement is to prevent Barr – which has the only FDA-approved generic Ovcon product – from offering consumers a lower-priced, therapeutically equivalent alternative to Warner Chilcott's higher-priced branded Ovcon. Consequently, as a result of defendants' agreement not to compete, an agreement that lacks any countervailing efficiency-enhancing justification, many purchasers – including consumers, insurers, pharmacies, wholesalers, government agencies, managed care organizations, and others – are paying higher prices in the market for Ovcon and its AB-rated generic equivalents than would otherwise prevail absent the agreement not to compete.

16

Barr denies each and every allegation contained in paragraph 66 of the Complaint.

67.    By entering into this illegal horizontal agreement not to compete, defendants Warner Chilcott and Barr have engaged, and are engaging, in unfair methods of competition in or affecting commerce, in violation of Section 5 of the FTC Act. 15 U.S.C. § 45 (2005).

Barr denies each and every allegation contained in paragraph 67 of the Complaint.

68.    Section 13(b) of the FTC Act empowers this Court to issue a permanent injunction against violations of the FTC Act and, in the exercise of its equitable jurisdiction, to order ancillary equitable relief to remedy the injury caused by defendants' violations.

Paragraph 68 of the Complaint contains legal conclusions concerning Section 13(b) of the FTC Act to which no response is required. To the extent a response is required, Barr denies each and every remaining allegation contained in paragraph 68 of the Complaint.

## DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims alleged in the Plaintiff's First Amended Complaint. Barr does not assume the burden of proof on these defenses where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.    The Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

17

### Third Affirmative Defense

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Affirmative Defense

5.     Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent, legitimate business and economic justifications, and was taken without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.     Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.     Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.     Plaintiff's claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.     Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.     Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have adversely affected, or caused injury to, the public interest.

### Eleventh Affirmative Defense

11.     Plaintiff's claims are barred, in whole or in part, because Barr had no knowledge, intention, notice or belief that Barr's actions might illegally restrain trade.  Further, Barr could not have known that its actions might illegally restrain trade.

### Twelfth Affirmative Defense

12.     Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

### Thirteenth Affirmative Defense

13.     Plaintiff's claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

### Fourteenth Affirmative Defense

14.     Plaintiff's claims are barred, in whole or in part, because Barr has no market power and Plaintiff has failed to allege any market power.

### Fifteenth Affirmative Defense

15.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

### Sixteenth Affirmative Defense

16.     Plaintiff's claims are barred because Section 13(b) of the FTC Act does not permit the FTC to seek a permanent injunction in federal court in this matter.

### Seventeenth Affirmative Defense

17.     Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

## PRAYER FOR RELIEF

Wherefore, Barr prays as follows:

1.     That the Court enter judgment for Barr;

2.     That the Court award Barr reasonable costs and expenses including but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

Dated:   December 19, 2005

By: _____
        Karen N. Walker (D.C. Bar # 412137 )
        Mark L. Kovner (D.C. Bar # 430431)
        Chong S. Park (D.C. Bar # 463050)

        KIRKLAND & ELLIS LLP
        655 Fifteenth Street, N.W.
        Washington, D.C.  20005
        Telephone: (202) 879-5100
        Facsimile:  (202) 879-5200

        *Attorneys for Defendant Barr Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on December 19, 2005, the undersigned attorney caused a true and correct copy of the foregoing DEFENDANT BARR PHARMACEUTICALS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT in Civil Action No: 1:05-CV-02179-CKK to be served on the following counsel of record and in the manner noted:

Markus H. Meier                                    By First Class Mail
Bradley S. Albert
Thomas H. Brock
David Dudley
Aaron Hewitt
James Rhilinger
600 Pennsylvania Avenue, N.W.
Washington, District of Columbia 20580
Phone:  (202) 326-3759
Fax:      (202) 326-3384

*Attorneys for Plaintiff Federal Trade Commission*


_____
Mark L. Kovner (D.C. Bar # 430431)