IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Valley Wholesale Drug Company, Inc.<br>1401 W. Fremont Street<br>Stockton, California 95203-2627, individually and<br>on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Warner Chilcott Holdings Company III, Ltd.<br>100 Enterprise Drive<br>Rockaway, New Jersey 07866,<br><br>Warner Chilcott Corporation<br>100 Enterprise Drive<br>Rockaway, New Jersey 07866,<br><br>Warner Chilcott (US) Inc.<br>100 Enterprise Drive<br>Rockaway, New Jersey 07866,<br><br>Galen (Chemicals), Ltd.<br>Unit 4 Burton Hall Pk<br>Sandyford Industrial Estate<br>Foxrock, Ireland,<br><br>and<br><br>Barr Pharmaceuticals, Inc.<br>2 Quaker Road<br>Box 2900<br>Pomona, New York 10970,<br><br>Defendants. | Civil Action No._____<br><br><br><br>**Class Action Complaint<br>Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff Valley Wholesale Drug Company, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, alleges as follows based upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters:

### I.    JURISDICTION AND VENUE

1.    This antitrust class action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief, treble damages and costs of suits for the injuries sustained by Plaintiff and similarly situated class members as a result of Defendants' violations of Section 1 of the Sherman Act, as alleged herein. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

2.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c). Defendants named herein transact business and/or are found within this district, and the interstate trade and commerce, hereinafter described, is carried out, in substantial part, in this district.

### II.    FACTUAL SUMMARY

3.    This case involves a horizontal agreement not to compete entered into between Warner Chilcott and Barr (as defined below and collectively referred to as "Defendants"), who are in the business of manufacturing and selling pharmaceutical drugs. As alleged more fully herein, Barr developed a generic drug which is bioequivalent to Warner Chilcott's Ovcon 35 (a prescription oral contraceptive) and was approved by the United States Food and Drug Administration ("FDA") for sale on or about April 22, 2004. However, in exchange for, *inter alia*, approximately $20 million, Barr entered into an agreement with Warner Chilcott not to

2

enter the United States market with its generic Ovcon 35 product for a period of five years (the "Agreement").

4.     The effects of the Agreement between Warner Chilcott and Barr were to prevent generic competition to Ovcon 35, thereby depriving U.S. purchasers of the benefit of a lower-cost alternative to Warner Chilcott's higher-priced Ovcon 35 birth control product.

5.     As a result of the Defendants' illegal Agreement, Warner Chilcott was able to preserve its United States market for Ovcon 35 and sell Ovcon 35 at artificially inflated prices.

6.     Plaintiff and members of the class are direct purchasers of Ovcon 35 and bring this action seeking a judgment that Defendants' Agreement is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiff seeks to enjoin this unlawful conduct and recover damages for the injuries sustained by it and members of the Class resulting from Defendants' unlawful Agreement.

## III.     THE PARTIES

7.     Plaintiff Valley Wholesale Drug Company, Inc. is a corporation organized under the laws of the State of California and is located at 1401 W. Fremont Street, Stockton, California, 95203-2627.  Plaintiff purchased the prescription drug Ovcon 35 directly from Warner Chilcott during the Class period, as defined below.

8.     Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.  Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products in the United States.

3

9.      Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc.  Warner Chilcott Corporation is organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129.

10.     Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation.  Warner Chilcott (U.S.) Inc. is organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

11.     Galen (Chemicals) Ltd., is organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland.  Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd.  Galen Chemicals entered into the anticompetitive agreement with Barr Pharmaceuticals, Inc. that is the subject of this lawsuit.

12.     Defendants Warner Chilcott Holdings Company III Ltd., Warner Chilcott Corporation, Warner Chilcott (US), Inc. and Galen (Chemicals) Ltd. are referred to herein as "Warner Chilcott."  Warner Chilcott is a specialty pharmaceutical company focusing on the development, sales and marketing of women's healthcare and dermatology prescription products.

13.     Defendant Barr Pharmaceuticals, Inc. ("Barr") is a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware with a principal place of business at 2 Quaker Road, P.O. Box 2900, Pomona, New York, 10970-0519.  Barr is engaged in the business of, among other things, developing, manufacturing, marketing and distributing generic oral contraceptive products.

4

## IV.    CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action on behalf of itself and, under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, as a representative of a Class defined as follows:

> All persons who have purchased Ovcon 35 directly from Warner Chilcott at any time during the period April 22, 2004 through and after the date hereof until the effects of Defendants' illegal contract, combination or conspiracy cease (the "Class").

Excluded from the Class are Defendants and their officers, directors, management and employees, subsidiaries or affiliates and all entities of the federal government.

15.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time, it is believed to be in the hundreds. Furthermore, the Class is readily identifiable from information and records maintained by Defendants.

16.    Plaintiff's claims are typical of the members of the Class. Plaintiff and all Class members were damaged by the same wrongful conduct by the Defendants: they have all paid artificially inflated prices for Ovcon 35 resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

17.    Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Plaintiff are coincident with, and not antagonistic to, those of the Class.

18.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of class actions and antitrust litigation.

19.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual Class members because Defendants have acted on

grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

20.    Questions of law and/or fact common to the Class include, but are not limited to, the following:

a)    whether Defendants combined, agreed or conspired as alleged herein in restraint of trade;

b)    whether Defendants' contract, combination or conspiracy is a *per se* violation of Section 1 of the Sherman Act;

c)    whether the activities of Defendants as alleged herein have substantially affected interstate commerce; and

d)    whether, and to what extent, the conduct of Defendants caused injury to the business or property of Plaintiff and the members of the Class, and if so, the appropriate relief and/or measure of damages.

21.    Class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would require. The benefits of proceeding by way of a class action, including providing injured persons or entities with a method for obtaining redress on claims that it might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

22.    Plaintiff knows of no difficulty which will be encountered in the management of this action that will preclude its maintenance as a class action.

## V.     FACTUAL BACKGROUND

### A.     Federal Regulation

23.     Under the Federal Food, Drug, & Cosmetics Act (21 U.S.C. §§301-392), a company seeking to sell a new drug must first obtain approval from FDA. This is accomplished by filing a New Drug Application ("NDA"), which must contain (among other things) data establishing the drug's safety and effectiveness. Once approved, a new drug is generally referred to as a "brand-name drug" because it is marketed under a trade name or trademark for the product rather than, for example, by the chemical name of the active ingredient in the product.

24.     In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug, & Cosmetics Act, 21 U.S.C. §§301-392.

25.     The Hatch-Waxman Amendments sought to get generic drugs to market faster. Companies seeking to produce and market a generic form of a brand-name drug were relieved of the obligation of filing a full NDA. Instead, generic manufacturers could file an Abbreviated New Drug Application ("ANDA") relying on the findings of safety and effectiveness supporting the NDA for the brand-name drug. FDA-approved generic drugs are certified by FDA as bioequivalent to the brand-name drugs with which they compete and are completely interchangeable with the brand-name drug. FDA refers to such drugs as "AB-rated" drugs.

26.     Upon their introduction, generic drugs are generally priced 30 to 50 percent (or more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of efficacy and safety, purchasers of brand-name drugs for which generic versions are available engage in extensive substitution of the generic for the brand-name drug. As a result, a brand-name drug facing generic competition typically loses a significant

7

share of its market to generics. The brand-name manufacturer may also give discounts to

customers in response to generic competition. Price competition from generic drugs benefits all

direct purchasers, who are able to buy fully interchangeable drugs at significantly lower prices.

**B.    Ovcon 35**

27.    Ovcon 35 has been available to the general public as a brand-name prescription

oral contraceptive product since approximately 1976. There are no known patents that continue

to protect this product.

28.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS")

manufactured, distributed and marketed Ovcon 35 in the United States.

29.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title,

and interest in Ovcon 35 products, including an agreement with Bristol-Myers Squibb

Laboratories Company ("BMSLC"), a wholly owned subsidiary of BMS, to supply Warner

Chilcott with Ovcon 35.

30.    Warner Chilcott then began marketing Ovcon 35 manufactured by BMSLC, and

continues to be the exclusive marketer of Ovcon 35.

31.    Ovcon 35 is highly profitable for Warner Chilcott. Warner Chilcott sells Ovcon

35 at a price substantially above Warner Chilcott's cost of acquiring the product.

32.    For the twelve months ending in September 30, 2004, Warner Chilcott's net sales

of Ovcon 35 were approximately $71.5 million.

**C.    Generic Ovcon 35**

33.    In September 2001, Barr filed its ANDA with the FDA requesting approval to

market a generic, AB-rated version of Ovcon 35 in the United States.

8

34.    In January 2003, Barr publicly communicated its intent to launch a generic version of Ovcon 35 by the end of 2003.

35.    Barr intended to offer for sale its generic version of Ovcon at a price approximately 30% less than the price charged by Warner Chilcott.

36.    Both Barr and Warner Chilcott projected that Barr's generic Ovcon 35 product would capture approximately 50% of Warner Chilcott's sales of Ovcon 35 in the first year.

37.    Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon 35 would decline by at least $100 million over a three-year period.

38.    In order to combat this threat, Warner Chilcott embarked on a strategy to replace Ovcon 35 with a chewable form of Ovcon 35 before generic entry by Barr.

39.    Warner Chilcott planned to engage in certain practices that could ultimately result in the replacement of prescriptions for (and supply of) non-chewable Ovcon 35 with chewable Ovcon 35.

40.    Prescriptions written for Ovcon 35 chewable would not be able to be filled at pharmacies with Barr's generic Ovcon 35 product because Barr's generic version of the non-chewable Ovcon 35 product would not be AB-rated to the Ovcon 35 chewable form.

41.    The change to a chewable form would bring no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon 35.

42.    By mid-2003, Warner Chilcott's strategy of switching users from non-chewable Ovcon 35 to Ovcon 35 chewable was in jeopardy because Barr's generic entry appeared imminent and Ovcon 35 chewable had not yet been approved by the FDA.

9

D.     <u>The Illegal Agreement Between Warner Chilcott and Barr</u>

43.     In August 2003, Warner Chilcott responded to Barr's imminent introduction of a generic version of Ovcon 35 by discussing with Barr potential business arrangements under which Barr would refrain from competing with its generic Ovcon 35 product.

44.     On September 10, 2003, Warner Chilcott and Barr signed a letter of intent to enter into an agreement in which Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon 35 product after Barr received final FDA approval. Instead, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

45.     On March 24, 2004, the Defendants signed their Agreement and Warner Chilcott paid Barr $1 million.

46.     Under the Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

47.     On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon 35.

48.     On April 23, 2004 Barr announced its intent to begin marketing its generic version of Ovcon 35 under the name "Balziva" in the event that Warner Chilcott chose not to exercise its option under the Agreement.

49.     On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19 million in exchange for

Barr's agreement not to compete with Warner Chilcott by introducing into the market its generic version of Ovcon 35.

50.    As a result, no generic version of Ovcon 35 was ever launched, and Barr has agreed not to launch a generic version of Ovcon 35 until at least May 2009.

51.    In the absence of the Agreement, Barr would have begun marketing its generic Ovcon 35 product after receiving FDA approval of its ANDA.

52.    As a consequence of the Agreement, purchasers of Ovcon 35 were required to continue purchasing brand-name Ovcon 35 product when less expensive generic product would have otherwise been available.

53.    If Barr had introduced its generic product, prices for Ovcon 35 would have declined rapidly.

54.    Barr has abided by its agreement not to sell generic Ovcon 35 in the United States, and no company, other than Barr, has received FDA approval for a generic version of Ovcon 35.

## VI.    TRADE AND COMMERCE

55.    At all material times, Ovcon 35 was shipped across state lines and sold to customers located outside the state of manufacture.

56.    During the relevant time period, in connection with the purchase and sale of Ovcon 35, monies as well as contracts, bills and other forms of business communications and transactions were transmitted in a continuous and uninterrupted flow across state lines.

57.    During the relevant time period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate and foreign travel, and interstate and foreign telephone commerce.

58.    The activities of Defendants as charged in this complaint were within the flow of, and have substantially affected, interstate commerce.

## VII.    VIOLATIONS ALLEGED

59.    Plaintiff hereby incorporates by reference the allegations set forth in paragraphs numbered 1 through 58 inclusive.

60.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon 35 out of the market, the Defendants have engaged in a continuing contract, combination and/or conspiracy, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

61.    The Defendants' contract, combination and/or conspiracy has included concerted action and undertakings between Defendants with the purpose and effect to fix, raise, maintain or stabilize the price of Ovcon 35.

62.    For the purpose of formulating and effectuating their contract, combination and/or conspiracy, Defendants performed the following acts, as alleged herein, including the following:

a)    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon 35 in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

b)    depriving direct purchasers of the ability to purchase Ovcon 35 at a competitive price.

63.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination and/or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

64.     Defendants' illegal contract, combination and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon 35 resulted in Plaintiff and the Class paying more than they would for Ovcon 35 absent Defendants' illegal conduct.

65.     Defendants' contract, combination and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

66.     In the alternative, Defendants' contract, combination and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under "Quick Look" and/or Rule of Reason analyses, since the purpose and effect of Defendants' acts were to unreasonably restrain competition in the sale of Ovcon 35 and generic versions of Ovcon 35. To the extent required by law, the relevant product market is Ovcon 35 and its AB-rated generic equivalents and the relevant geographic market is the United States.

## VIII.  EFFECTS

67.     Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

(a)     Prices for Ovcon 35 have been fixed, raised, maintained or stabilized at artificially high and non-competitive levels;

(b)     Buyers of Ovcon 35 were unable to purchase lower-priced generic versions of Ovcon 35;

(c)     Buyers of Ovcon 35 have been deprived of the benefits of free and open competition in their purchases; and

(d)     Competition in the production and sale of Ovcon 35 has been restrained, suppressed and eliminated.

## IX.    DAMAGES TO MEMBERS OF THE CLASS

68.    During the relevant period, members of the Class purchased substantial amounts of Ovcon 35 from Warner Chilcott. As a result of the illegal conduct of Defendants, members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon 35. Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal agreement, combination and/or conspiracy alleged herein. Members of the Class have as a consequence sustained substantial losses and damage to their businesses and property in the form, among others, of overcharges. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

## X.    JURY DEMAND

69.    Plaintiff demands trial by jury on all issues so triable.

## XI.    PRAYER FOR RELIEF

70.    WHEREFORE, Plaintiff, on behalf of itself and the Class, prays that:

A.    The Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Procedure, be given to the Class;

B.    The contract, combination or conspiracy alleged herein be adjudged and decreed to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

C.    Defendants be enjoined from continuing their illegal contract, combination, and/or conspiracy;

14

D.   Each member of the Class recover treble the damages determined to have

     been sustained by each of them, and that joint and several judgment be

     entered against each Defendant in favor of the Class;

E.   The Class recover their costs of suit, including reasonable attorneys' fees

     as provided by law; and

F.   The Court award such other, further and different relief as the nature of

     this case may require or as may be determined to be just, equitable and

     proper by this Court.

Dated:  December 2, 2005                    Respectfully submitted,


                                    By: _____
                                        BOIES, SCHILLER & FLEXNER LLP

                                        Richard B. Drubel (No. 334359)
                                        Kimberly H. Schultz
                                        BOIES, SCHILLER & FLEXNER LLP
                                        26 South Main Street
                                        Hanover, NH  03755
                                        Telephone:  (603) 643-9090
                                        Facsimile: (603) 643-9010

                                        William Isaacson (No. 414788)
                                        Tanya Chutkan (No. 420478)
                                        BOIES, SCHILLER & FLEXNER LLP
                                        5301 Wisconsin Ave., N.W., Suite 800
                                        Washington, DC  20015
                                        Telephone: (202) 237-2727
                                        Facsimile:  (202) 237-6131

                                        Angela K. Drake
                                        Nicole D. Lindsey
                                        LOWTHER JOHNSON LLC
                                        901 St. Louis Street, 20th Floor
                                        Springfield, MO  65806
                                        Telephone:  (417) 866-7777
                                        Facsimile:  (417) 866-1752


                                15

Michael Heim
Russ Chorush
CONLEY ROSE
Chase Tower
600 Travis Street, Suite 1800
Houston, TX 77002-2910
Telephone: (713) 238-8000
Facsimile: (713) 238-8008

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALLEY WHOLESALE DRUG )
COMPANY, INC., on behalf of itself and )
all others similarly situated, )
                                    )
                                    )      Civil Action No. _____
                    Plaintiff, )
                                    )
        v.                          )
                                    )
WARNER CHILCOTT HOLDINGS )
COMPANY III, LTD., WARNER )
CHILCOTT CORPORATION, WARNER )
CHILCOTT (US) INC., GALEN )
(CHEMICALS), LTD AND BARR )
PHARMACEUTICALS, INC., )
                                    )
                    Defendants. )
                                    )

## CERTIFICATE UNDER LCvR 7.1

    I, the undersigned counsel of record for Valley Wholesale Drug Company, Inc., certify
that to the best of my knowledge and belief, there are no parent companies, subsidiaries or
affiliates of Valley Wholesale Drug Company, Inc. which have any outstanding securities in the
hands of the public.

    These representations are made in order that judges in this Court may determine the need
for recusal.

DATED:  December 2, 2005.          By:  _____

William Isaacson, Esq. (No. 414788)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave., N.W.
Suite 800
Washington, D.C. 20015
Tel: 202/237-2727
Fax: 202/237-6131

**Attorney of Record for Valley Wholesale
Drug Company, Inc.**

2