# EXHIBIT B

# KIRKLAND & ELLIS LLP
#### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Karen N. Walker
To Call Writer Directly:                              202 879-5000                              Facsimile:
202 879-5096                                                                              202 879-5200
kwalker@kirkland.com                              www.kirkland.com

June 27, 2006

**Via Electronic Mail and Electronic Filing Service**

Thomas H. Brock, Esq.
Bureau of Competition
Federal Trade Commission
Room 360
600 Pennsylvania Avenue, N.W.
Washington, DC  20580

   Re: *Federal Trade Commission, et al., v. Warner Chilcott Holdings Company III,*
     *Ltd., et al.,* Civ. Action Nos. 1:05-CV-02179-CKK, 1:05-CV-02182-CKK

Dear Tom:

   I am responding to your letter of June 12 and our meet-and-confer of June 22 on the issue of Barr's Responses to the Government Plaintiffs' First Request for Production.

   Regarding the issues you raised, I confirmed the following: *First,* with respect to Barr's custody and control objections, Barr is *not* taking the position that non-privileged documents in the possession of outside counsel are beyond Barr's custody and control.

   *Second,* as we discussed, Barr simply intended that it would not have to re-produce responsive documents the FTC currently has in its possession from prior investigations. You indicated that in some cases, such as in the example of the Mircette investigation, such documents have been returned or destroyed. In such cases we would withdraw the objection and re-produce responsive documents. You indicated that the FTC does have continuing access to the documents produced in the pre-complaint investigation in this matter and in connection with the Merger Division's review of the submitted Barr-Warner Chilcott transactions (No. 2003-1000). I am unclear as to the meaning of your letter, however, when you state your willingness to exclude documents produced in connection with the pre-complaint investigation here (No. 041-0034) and "two earlier investigations." We need you to clarify which two earlier investigations you mean. Regarding our searches for new document requests, I clarified that we were not refusing to search files already searched in connection with prior investigations for new documents, only that we will not duplicate the exact same searches or be obligated to produce documents already produced.

Chicago   London   Los Angeles   Munich   New York   San Francisco

Thomas H. Brock, Esq.
June 27, 2006
Page 2

*Third*, I indicated that we are willing to provide you with information regarding document retention and backup files. Our objection was principally to searching backup tapes when we believed the information sought was still available in current files and systems. In any event, we will provide you with sufficient information to evaluate our production.

*Fourth*, regarding discovery on drugs other than Ovcon, we believe it is inconsistent for the Government Plaintiffs to assert that market definition is not at issue in the case simultaneously with seeking to pursue massive discovery on the issue. The State Plaintiffs, for example, joined in these requests while meanwhile filing a motion seeking to block all discovery, even relating to Ovcon. At the same time, the FTC has withheld approximately 5500 responsive documents from defendants without providing us with sufficient information on its privilege log to evaluate the FTC's broad and perfunctory "privilege" claims. The FTC's privilege log fails to identify the authors and recipients of most of the documents in question and gives only conclusory descriptions of what are, in many cases, large groupings of documents.

In contrast, the Government Plaintiffs have basically requested virtually any document relating to any of Barr's numerous contraceptive products *as well as* all other Barr products that *could* be manufactured at the same plants (*see* Requests No. 26, 34). This would constitute massive discovery requesting a huge percentage of Barr's products, and is clearly beyond what is reasonable to evaluate market definition in this case. The relevant inquiry regarding market definition is whether products are interchangeable -- it is simply unreasonable to demand all documents regarding all other drugs simply to prove whether certain contraceptives are interchangeable. In fact, your failure to demand similar information from Warner Chilcott confirms that this request is overbroad.

Notwithstanding the foregoing, as I indicated, Barr is willing to consider a compromise that would include a reasonable scope of documents regarding other key contraceptive products (such as Loestrin, Nordette, Kariva, and Norethindrone). If you proffer why discovery of non-contraceptive products (whom nobody is contending are part of the relevant market) is relevant, we will also consider producing a sampling of non-contraceptive product data.

I asked that you indicate what the Government Plaintiffs believe is the core information they seek regarding relevant markets, but you refused. In an attempt to reach a compromise, Barr is willing to provide reasonable discovery regarding other contraceptive products – specifically, Barr would consider withdrawing its "Ovcon only" objection with respect to all responses with the exception of numbers 13, 26 and 32-36. As to those Requests, Barr would be willing to provide discovery (as described above) on a reasonable sample of other products or to provide summary transactional information, or any other reasonable scope limitation you may suggest.

Thomas H. Brock, Esq.
June 27, 2006
Page 3

As for the timing of Barr's production, we expect to begin production of materials we agreed to produce and we have already begun to collect within the next several weeks. We would produce that information on a rolling basis and hope to substantially complete that production by the end of July. Because we seek to avoid duplicative searches, we would like to resolve the disputed scope issues before commencing more burdensome searches of the Company.

Finally, with respect to your requests for depositions of Barr personnel, as you know, we have already agreed to produce Mr. Downey and for him to appear in Washington, D.C. Few other Barr executives travel with any frequency to Washington, and are located in New Jersey. Accordingly, these witnesses will be produced for deposition in either Woodcliff Lake, New Jersey (where Barr is headquartered) or in New York City at our Firm's offices there. We are awaiting deposition dates for Mr. Bisaro, Mr. Catlett, Mr. Sawyer, and Mr. Bogda and will try to provide you with those confirmed dates next week.

With respect to Ms. Ben-Maimon, after specific inquiry, we do not believe she has any relevant knowledge relating to Ovcon at all. Ms. Ben-Maimon (President of Duramed) is head of Barr's *branded* business and therefore had no dealings whatsoever with the development, planning, production, or any other aspect of generic Ovcon. To the extent plaintiffs were seeking a witness knowledgeable about the ANDA process on Ovcon, we would submit that Ms. Christine Mundkur is the knowledgeable witness on such issues. Similarly, Mr. Bill McKee, Barr's CFO, has no specific knowledge relating to Ovcon. If plaintiffs wish to inquire regarding financial and/or transactional data regarding Ovcon (or other products), those issues would be best addressed by Mr. Catlett and/or VP-Finance/Controller Mr. Kirk.

Finally, Mr. Killion is the General Counsel of Barr and his involvement with the Ovcon transaction was limited to providing legal advice in connection with the drafting of the agreements between Warner Chilcott and Barr and the scope of the agreement generally. Mr. Killion would thus not be permitted to testify about any significant non-privileged matters relating to Ovcon. At a minimum, Mr. Killion's deposition should be deferred until there is some evidence that he has any non-cumulative, non-privileged information to provide.

Sincerely,

/s/ Karen N. Walker

Karen N. Walker