IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action Nos.   1:05-cv-2179-CKK |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*, | ) ) ) ) | 1:05-cv-2182-CKK |
| Defendants. | ) ) | |

**GOVERNMENT PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DEFENDANT BARR'S PRODUCTION OF DOCUMENTS**

In this case, the Federal Trade Commission and the Plaintiff States challenged an anticompetitive agreement between defendants that denies women who use Ovcon – and those that pay for it – the opportunity to get Barr's lower-cost generic alternative to Ovcon. We contend that this agreement is illegal without proof of anticompetitive effects and without defining a relevant antitrust market because: (1) the agreement prevents horizontal competition for five years from the only company with a generic alternative to Ovcon; and (2) defendants cannot advance a plausible procompetitive justification for the restraint.

Defendants dispute these charges. In their affirmative defenses, and in pleadings filed with this Court, they argue that eliminating competition from Barr's generic Ovcon makes no difference to consumers because consumers can choose from a variety of other contraceptives, including over twenty manufactured and sold by Barr. To assess these arguments, we sought discovery relating to Barr's other contraceptives. Notwithstanding that defendants directly put these other contraceptives at issue in the litigation, Barr objected to these requests as irrelevant.

In its response to our motion to compel, Barr now implicitly appears to concede that discovery relating to its other contraceptive products is relevant to this case. Barr recognizes that we are entitled to discovery "regarding the interchangeability of Ovcon and other contraceptive products." Barr Opp. at 8. And Barr does not dispute that we are entitled to information necessary to evaluate whether Barr would have the incentive to cut off the supply of Ovcon to Warner Chilcott in order to divert demand to Barr's other contraceptive products. Nonetheless, Barr continues to be evasive about whether, and to what extent, it is prepared to produce documents about its other contraceptive products that bear directly on these issues.

For example, although Barr maintains its objections to each request that asks for information about its "other contraceptives," Barr dumped over 265,000 pages of documents which it claims relate to these "other contraceptive products." Barr Opp. at 6. But when asked to identify the requests to which they were responding, Barr refused to do so.[1] As a result, we have no way of knowing to which requests Barr has, and has not, decided to respond, or for which "other contraceptive products" Barr has, and has not, decided to provide information. We respectfully submit that the only way to end Barr's evasion is for the Court to order Barr to produce information responsive to each of our requests and for each of its contraceptive products.

## I. The Excluded Requests Seek Information that Bear Directly on Arguments that Defendants Have Made Relevant to this Litigation

Under Barr's latest proposal – made for the first time in its response to our motion – Barr suggests that it is willing to produce documents responsive to nine document requests that it

---

[1] *See* Letter from Thomas H. Brock, Esq., to Karen N. Walker, Esq., dated July 31, 2006 (attached as Ex. A); Letter from Karen N. Walker, Esq. to Thomas H. Brock, Esq., dated August 1, 2006 (attached as Ex. B).

unilaterally selected.[2]  Barr Opp. at 4.  Barr maintains its objections as to the other thirteen requests, however: Requests Nos. 12, 13, 23, 24, 25, 26, 28, 29, 32, 33, 34, 35, and 36 (collectively, "the Excluded Requests").  Barr cannot have it both ways – it cannot insist that its promise not to launch a generic version of Ovcon is (1) not anticompetitive due to the availability of other contraceptives, and (2) ancillary to a efficiency-enhancing supply arrangement – but then claim that information about these very issues are not relevant to this litigation.[3]

**"All Contraceptives are Interchangeable" Argument:** The heart of defendants' product market defense is the argument that many contraceptives are functionally interchangeable with Ovcon, and thus, the elimination of competition from generic Ovcon makes little difference to consumers.[4]  We do not dispute that there are many other products – in

---

[2] Specifically, Barr suggests that it is willing to produce documents responsive to requests numbers 14, 22, 27, 30, 37, 38, 39, 40 and 42.  Barr Opp. at 4.  Barr made this proposal for the first time in its brief; it was never discussed during our Local Rule 7(m) conference or in any of the other conversations before our motion to compel was filed.  We contacted Barr after it filed its opposition brief to discuss its latest proposal.  Barr dismissed our initiative as a "one-sided effort to 'have your cake and eat it too.'" *(See* Ex. B).  Based on this response, we decided that the parties were still at an impasse.

[3] Barr falsely accuses us of "intransigence" and even asserts that we did not respond to its inquiries.  Barr's Brief at 5.  In fact, even after our June 26, 2006, meet-and-confer efforts were unsuccessful, we continued our negotiations with Barr.  Several days later, we extended one final invitation to Barr: "We are willing to consider proposals that might limit the number of documents that Barr has to produce, as long we obtain documents that contain the information that we seek."  Letter from Thomas H. Brock, Esq., to Karen N. Walker, Esq., dated June 30, 2006 (attached as Ex. C).  Barr never responded to our June 30 letter and it did not submit this June 30 letter with the other exhibits it submitted with its brief.

[4] Plaintiffs' position that the agreement not to compete can be condemned without defining a relevant market has no bearing on the appropriate scope of discovery.  The Federal Rules clearly provide that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim *or defense* of any party."  Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 458 (D.D.C. 2003) (granting motion to compel where plaintiff sought discovery relevant to responding to defendants'

addition to Ovcon – that can be used to prevent pregnancy. But this is little, if any, proof, that any of these other therapeutic agents are "reasonable substitutes" for Ovcon in the antitrust sense. For as the Supreme Court teaches in *du Pont*, reasonable interchangeability is not only a question of the functional substitutability among products, but must take into account "price, use, and qualities." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). Thus, to assess the reasonable interchangeability of different products in antitrust litigation, courts have considered a variety of factors, including, but not limited to:

- "the responsiveness of the sales of one product to the price changes of the other" – i.e., cross-elasticity of demand;[5]

- whether the sellers take substantial account of other products in marketing and pricing;[6]

- differences in the price or price movements;[7] and

- whether legal restrictions prevent effective price competition between two products.[8]

---

defense).

[5] *du Pont*, 351 U.S. at 404.

[6] *See FTC v. Coca-Cola Co.*, 641 F. Supp. 1128, 1133 (D.D.C. 1986) (noting that "pricing and marketing decisions [were] based primarily on comparison with rival carbonated soft drink products, with little if any concern about competition from other beverages"), *vacated as moot*, 829 F.2d 191 (D.C. Cir. 1987).

[7] *See United States v. Aluminum Co. of America*, 377 U.S. 271, 276-77 (1964) (finding that aluminum cable constituted a market separate from copper cable even though "each does the job equally well").

[8] *See United States v. ADM Corp.,* 866 F.2d 242, 246 (8th Cir. 1988) (finding that because government price supports raised price of sugar, sugar is not in same market as high fructose corn syrup).

Much of the information sought in the "Excluded Requests" relate to these factors. Specifically,

- Requests 12 and 36 seek documents about how one contraceptive product impacts the sales, revenues or profits of Barr's other contraceptive products. This evidence is directly relevant to the central question raised by defendants' affirmative defense – that is, the extent to which contraceptive products are "reasonable substitutes" for one another in a relevant antitrust sense.

- Requests 13 and 35 seek documents relating to Barr's pricing behavior for its contraceptive products. Request 13, for example, calls for pricing data, which is required by law to be submitted to the Department of Health and Human Services pursuant to the Medicaid rebate program. This data may be a valuable source of information to assess the substitutability of contraceptive products, particularly when combined with similar data that we expect to obtain from other contraceptive manufacturers pursuant to third-party subpoenas.

- Requests 29, 32, 33, and 34 seek data about the sales, revenues, samples, or profits of contraceptive products. Access to this data is essential to perform any robust economic analysis of consumer substitution among the different contraceptive products that defendants contend must be included within the relevant product market.

**"Barr's Incentive Not to Perform" Argument:** The core of defendants' "incentive" argument is that the exclusivity provision that prevents Barr from competing with its own generic version of Ovcon is "the only way to eliminate Barr's incentive not to perform." Otherwise, as the argument goes, "Barr would have the incentive to choke off WC's Ovcon supply and control pharmacy substitution." (Presentation to the Federal Trade Commissioners, at 27).[9] Since defendants apparently intend to put at issue Barr's incentives to perform under the supply contract, we are entitled to take discovery that is reasonably calculated to lead to the discovery of admissible evidence that relates to these incentives.

---

[9] *See also* Barr's Fifth Affirmative Defense (conduct is "reasonable, based on independent, legitimate business and economic justifications").

The remainder of the "Excluded Requests" seek information relevant to the defendants' arguments about Barr's incentives. Specifically, Requests 23, 24, 25, 26, and 28 seek documents about the costs and profitability of Barr's other contraceptive products, and information about each of Barr's manufacturing facilities that is, or could be, used to produce contraceptive products. Barr's capacity to produce contraceptive products, and the relative profitability to Barr of producing these products as compared to producing Ovcon for Warner Chilcott is relevant to assess defendants' claim that – absent the exclusivity provision – Barr would have the financial incentive to cut off Ovcon supply to Warner Chilcott.

Barr's artificial limitations on "other contraceptive" discovery is inappropriate, and the Court should order Barr to respond to each of our document requests.[10]

## II.     The Excluded Requests Are Consistent with the Scope of Other Discovery in the Pending Lawsuits.

Barr says that discovery relating to other contraceptive products is irrelevant to this litigation. But actions speak louder – and, in this case, more accurately – than words. And what defendants' actions show is that they repeatedly have sought discovery – both from plaintiffs and from third parties – regarding the purchase and sale of contraceptive products other than Ovcon. Indeed, defendants have subpoenaed at least seven other pharmaceutical companies for documents relating to other contraceptive products. Moreover, many of defendants' demands for

---

[10]     If the Court grants our motion to compel, it should not order the FTC and the Plaintiff States to bear the costs of Barr's production, as Barr insists. Barr Opp. at 10. Barr's only support for its position is the Advisory Notes to a proposed subsection of Rule 26 which is not effective until December 1, 2006. Fed. R. Civ. P. 26(b)(2)(C). Even if this proposed Rule becomes effective, it would not, as Barr suggests, shift the costs of routine discovery to the requesting party. Rather, it would apply only to expenses relating to the production of electronically-stored information which, due to the technological features of the storage system, is not readily accessible.

documents from these non-party pharmaceutical companies mirror the information we seek from Barr. For example, we both seek:

- documents relating to sales, price, revenues, profits or costs of contraceptive products (Plaintiffs' Req. No. 34; Defs.' Subpoena Duces Tecum to Berlex, at No. 1 (attached as Ex. D));

- documents relating to the Medicaid Rebate Program (Plaintiffs' Req. No. 13; Defs' Subpoena Duces Tecum to Berlex, at No. 2); and

- documents relating to the effect one contraceptive product has on the sales, revenues, or profits of another contraceptive product (Plaintiffs' Req. No. 12; Defs' Subpoena Duces Tecum to Berlex, at No. 14).[11]

Barr should be required to produce to us that which it seeks from third parties.

---

[11] Defendants' demands to the other pharmaceutical manufacturers are similar.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel defendant Barr to produce documents should be granted.

Dated: August 10, 2006

　　　　　/s/
Markus H. Meier (DC Bar # 459715)
Bradley S. Albert
Thomas H. Brock (DC Bar # 939207)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20580
(202) 326-3759

Counsel for Plaintiff
Federal Trade Commission


　　　　　/s/
Devin M. Laiho
Assistant Attorney General
Consumer Protection Section
STATE OF COLORADO
1525 Sherman Street, 5th Floor
Denver, CO 80203
(303) 866-5079

Meredyth Smith Andrus
Assistant Attorney General
STATE OF MARYLAND
200 St. Paul Street
Baltimore, MD 21202
(410) 576-6470

Counsel for the Plaintiff States