IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 1:05CV02179<br><br>Judge Colleen Kollar-Kotelly |

**DEFENDANT BARR PHARMACEUTICALS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE FTC'S COMPLAINT AS MOOT**

Barr Pharmaceuticals, Inc. ("Barr") hereby moves to dismiss the FTC's complaint for lack of subject matter jurisdiction, because the FTC's case is moot. There is simply no longer a justicable case or controversy for this Court to address and *no* relief that can be granted.

In its complaint, the FTC alleges that the Defendants' License and Supply Agreement was anticompetitive *because* Barr granted an *exclusive* license (to its ANDA for generic Ovcon) to Defendant Warner Chilcott. The FTC sought to enjoin Barr and Warner Chilcott from operating under that exclusive license, *i.e.*, it sought a Court order rendering the Defendants' License and Supply Agreement *non*-exclusive. But on September 25, 2006, with the launch of its chewable version of Ovcon 35 ("Ovcon 35 Fe"), Warner Chilcott irrevocably waived all exclusivity provisions in the License and Supply Agreement with Barr — the very relief that the

1

FTC had sought in its complaint. *See* Sept. 25, 2006 Waiver (Ex. A (filed under seal pursuant to Protective Order)). Warner Chilcott's waiver of exclusivity thus moots the FTC's case. Indeed, underscoring the finality of Warner Chilcott's waiver of exclusivity under the agreement, Barr announced that it would exercise its rights under the now non-exclusive agreement and enter the market with a generic version of regular Ovcon 35 in October 2006.[1]

Because there is no relief that can be granted by the Court, the FTC's case is moot and must be dismissed under Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

In September 2003, Warner Chilcott and Barr entered into a letter of intent in which Barr contemplated granting Warner Chilcott an option for a five-year exclusive license to Barr's Abbreviated New Drug Application ("ANDA") for a generic version of Warner Chilcott's Ovcon 35 oral contraceptive product. Barr and Warner Chilcott affirmatively brought this letter of intent for an exclusive license to the attention of the FTC and, in fact, submitted a copy of the letter of intent to the FTC for its review. The FTC reviewed the Defendants' agreement and, at that time, neither advised the Defendants that it believed that the exclusive license would constitute a *per se* violation of the antitrust laws (as it would later allege in its First Amended Complaint filed in December 2005), nor elected to take any action to challenge that agreement.

Thus, on March 24, 2004, Warner Chilcott and Barr executed a final option and license agreement, which implemented the letter of intent. Simultaneously, Warner Chilcott and Barr entered into a Finished Product Supply Agreement that provided Barr would supply Warner Chilcott with Ovcon 35 on an exclusive basis for five years in the event that Warner Chilcott

---

[1] *See* Barr Pharmaceuticals, Inc. Press Release (Sept. 26, 2006), *available at* http://phx.corporate-ir.net/phoenix.zhtml?c=60908&p=irol-newsArticle&ID=909303&highlight (attached hereto as Ex. B).

exercised its option for the license to Barr's ANDA. In April 2004, Barr received approval from the FDA to produce Ovcon under its ANDA. And, on May 6, 2004, Warner Chilcott exercised its option to obtain the exclusive license to Barr's ANDA.

Two years after Barr and Warner Chilcott submitted their letter of intent to the FTC, the FTC filed a complaint, alleging that the exclusive license agreement violates the antitrust laws. In particular, the FTC's complaint alleges that the exclusive license Barr granted to Warner Chilcott is an anticompetitive restraint of trade in violation of Section 5 of the FTC Act because it does not allow Barr to introduce a generic version of Ovcon 35 for a period of five years. (*See* First Am. Compl. ¶¶ 62-67.) Importantly, the FTC's complaint does not seek disgorgement, restitution or any monetary relief. Rather, the FTC's complaint seeks only equitable relief; specifically, a permanent injunction preventing the Barr and Warner Chilcott from enforcing or operating under the exclusive license. (*Id.* at Section X., ¶¶ 1-2.) In other words, the FTC only seeks a Court order rendering the Defendants' license agreement ***non***-exclusive.

But on September 25, 2006 Warner Chilcott irrevocably and permanently waived all exclusivity provisions in the License and Supply Agreement with Barr — the very relief that the FTC had sought in its complaint. (*See* Ex. A.) And, one day later, Barr announced that it would enter the market with a generic version of regular Ovcon 35 in October 2006. (*See* Ex. B.)

In light of Warner Chilcott's waiver of exclusivity (and in light of Barr's decision to introduce a generic version of Ovcon 35), the FTC's claim is now moot — there is simply no longer any relief that can be granted. Barr therefore respectfully submits that the FTC's First Amended Complaint, should be dismissed, for lack of subject matter jurisdiction.

3

## ARGUMENT

It is black letter law that a federal court may not render an advisory opinion. Rather, Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. Because the FTC sought only to enjoin Barr and Warner Chilcott from operating under an exclusive license arrangement, Warner Chilcott's irrevocable waiver of the exclusivity provisions of the Defendants' License and Supply Agreement (and Barr's decision to launch a competing generic Ovcon) means that there is no justicable case or controversy pending before the Court, and any order issued in this case would be merely advisory. There is no longer any relief that can be granted by the Court, thus the Court lacks subject matter jurisdiction.

**I.    BECAUSE THERE IS NO LONGER AN ARTICLE III CASE OR CONTROVERSY THE FTC'S CASE IS MOOT AND SHOULD BE DISMISSED.**

Article III of the Federal Constitution limits the power of judicial review to "Cases" and "Controversies." U.S.C.A. Const. art. 3, §2; *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980); *Law Office of Azita Mojarad v. United States Citizenship & Immigration Serv.*, CIV No. 05-0038 (CKK), 2006 U.S. Dist. LEXIS 17090, at *14-15 (D.D.C. Mar. 25, 2006). A case fails to meet the Article III case-or-controversy requirement, and is thus moot, when changes in the facts of the case resolve the underlying conflict such that "the issues presented are no longer 'live'." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).[2]

Here, there is no longer a genuine controversy among the parties (and there is no relief that can be granted by the Court) because recent developments have resolved the underlying conflict. The FTC's complaint centers on one issue: whether the exclusivity provisions of the

---

[2] The Supreme Court has long framed the case-or-controversy requirement and accompanying mootness doctrine in light of Article III's prohibition against advisory opinions. *See Flast v. Cohen*, 392 U.S. 83, 96-97 (1968). The advisory opinion prohibition ensures that cases presented to the court will be "actual controversies," rather than hypothetical legal questions. *Mills v. Green*, 159 U.S. 651, 653 (1895) ("The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions …").

4

License and Supply Agreement between Defendants Barr and Warner Chilcott violated Section 5 of the FTC Act. As discussed below, this issue has been fully resolved and the FTC's claim is now moot.

As the FTC acknowledges, Warner Chilcott has been in the process of developing a chewable version of its Ovcon 35 oral contraceptive for many years. (*See* First Am. Compl. ¶¶ 39-40.) On September 8, 2006, Warner Chilcott issued a "trade notice" to its customers stating that Ovcon 35 Fe — the trade name for a new chewable version of Ovcon 35 — would be marketed by Warner Chilcott in place of (non-chewable) Ovcon 35. *See* Sept. 7, 2006 Warner Chilcott Trade Notice (attached hereto as Ex. C). With the launch of Ovcon 35 Fe (which Warner Chilcott manufactures at its own facilities in Puerto Rico), Warner Chilcott no longer needed an exclusive license and supply arrangement with Barr for (old) Ovcon 35. Therefore, on September 25, 2006, Warner Chilcott executed an irrevocable waiver that fully released Barr from all exclusivity provisions in the parties' License and Supply Agreement. (*See* Ex. A.)

Warner Chilcott's waiver of the exclusivity provisions of the License and Supply Agreement — and changing market conditions — have thus rendered the FTC's case moot. The FTC's complaint only seeks to enjoin Barr and Warner Chilcott from operating under an ***exclusive*** License and Supply Agreement. (*See* First Am. Compl., Section X., ¶¶ 1-3.) Thus, the conduct of which the FTC complained (the exclusivity of the license) has ceased and the relief sought (an order rendering the license non-exclusive) can no longer be granted — the relief sought has already been granted. Barr is now free to enter the market with a generic version of Ovcon, and is free to supply any other party with a generic version of Ovcon. Indeed, underscoring the finality of Warner Chilcott's waiver of exclusivity, Barr has already announced

that it will enter the market with its generic version of Ovcon 35, called Balziva, ***this month.*** (*See* Ex. B.)

Lacking any actual, ongoing controversy, any decision in this case "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002). Accordingly, the FTC's lawsuit should be dismissed for lack of subject matter jurisdiction.

## II. NO EXCEPTIONS TO THE MOOTNESS DOCTRINE APPLY TO THIS CASE.

To avoid dismissal for mootness, the FTC must "satisfy the court … that 'there exists some cognizable danger of **recurrent violation** …'" *Am. Fed. of Gov't Employees, AFL-CIO v. Brown*, 866 F. Supp. 16, 19 (D.D.C. 1994) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).[3] But "something more than the mere possibility" of a "recurrent violation" is necessary. *Id.* Thus, a case is rendered moot (and should be dismissed) where the alleged wrongful conduct has ceased prior to the resolution of litigation, there is no reasonable expectation that the conduct at issue will be repeated, and the effects of the alleged violation have been eliminated. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (mootness doctrine applies where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"). That is precisely the case here.

By irrevocably waiving all of the exclusivity provisions of the License and Supply Agreement with Barr, Warner Chilcott has voluntarily ceased its alleged illegal conduct. And, there can be no reasonable expectation that the conduct at issue will be repeated. Indeed, it is inconceivable how — after Barr has announced its intention to market a generic version of

---

[3] The Supreme Court has enunciated only four exceptions to the mootness doctrine: (1) collateral consequences; (2) wrongs "capable of repetition yet evading review;" (3) class action suits; and (4) voluntary cessation. *See* Erwin Chemerinsky, Federal Jurisdiction, §2.5.2-2.5.5 (3d ed. 1999). Of these four enumerated exceptions, only the so-called voluntary cessation exception is even potentially relevant to the facts of this case.

Ovcon 35 pursuant to its ANDA — the Defendants' new non-exclusive agreement could return to an exclusive agreement in the future.

Warner Chilcott has launched its new chewable version of Ovcon and has announced its intention to discontinue the promotion and distribution of original (non-chewable) Ovcon 35. For Warner Chilcott, quite simply, it would make *no* business sense to renew an exclusive relationship with Barr with respect to a product Warner Chilcott no longer wishes to sell. Nor would it make any economic sense for Barr to enter into an exclusive license with Warner Chilcott in the future—Barr has publicly announced that it will introduce its generic version of regular Ovcon 35 (called Balziva), and has, accordingly, invested in its production equipment in order to label and package its generic product.[4] To renew an exclusive supply relationship with Warner Chilcott would mean Barr would waste these investments. But, more importantly, it would make *no* sense for Barr to abandon its plans to introduce a generic version of Ovcon and thereby forgo the revenues it expects to generate by selling that generic product. In short, neither Barr nor Warner Chilcott has any economic incentive to renew the exclusive license that the FTC sought to enjoin and thus there can be no reasonable expectation that the alleged wrong (exclusivity) will be repeated.[5] *Cf. SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 406-407 (1972); *Pub. Util. Comm'n of Cal. v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996) (holding where "market circumstances" make it "economically infeasible" to repeat

---

[4] Barr did not package Ovcon 35 for Warner Chilcott. Rather, Barr manufactured the product and shipped it, in bulk, to Warner Chilcott for packaging at its facility. Therefore, Barr must now develop the "trade dress" and packaging for its generic version of Ovcon.

[5] It is also unreasonable to expect the occurrence of future, "similar and related conduct," which the FTC complaint also asks this Court to enjoin. (First. Am. Compl., Section X, ¶ 2.) As the Supreme Court has made clear, the mere possibility of a defendant engaging in "similar and related conduct" does not give rise to a case or controversy under Article III. Rather, there must be "some cognizable danger of recurrent violation, [and] something more than the mere possibility" that the alleged illegal conduct will be repeated. *W.T. Grant Co.*, 345 U.S. at 633. Given the practical and economic realities existent here there can be no such "cognizable danger" and, certainly, there is nothing to suggest that either Barr or Warner Chilcott plan to enter into "similar or related" agreements.

the wrongful conduct complained of, there can be no reasonable expectation that that conduct will be repeated).

Furthermore, there can be no question that the alleged effects of the conduct have been eliminated. Because the FTC could not force Barr to enter the market with a generic version of Ovcon 35, the FTC sought only to prevent the parties from enforcing the exclusivity provisions of their License and Supply Agreement so that Barr could introduce a generic version of Ovcon 35 if it so chose to do so. The alleged effect of the exclusive license — the inability of Barr to introduce a generic Ovcon equivalent — has unquestionably has been eliminated with Warner Chilcott's waiver of exclusivity. Now, Barr is not only free to introduce a generic version of Ovcon 35, it will actually do so this month.

Because no justicable case or controversy now exists, and because there is no cognizable danger of any alleged future violations or "similar and related" conduct, this case must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the plaintiff FTC's First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

October 5, 2006

/s/ Karen N. Walker
Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, District of Columbia 20005
(202) 879-5000
(202) 879-5200 (fax)

*Counsel for Barr Pharmaceuticals, Inc.*