## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 1:05-CV-2179<br><br>Judge Colleen Kollar-Kotelly |

## MEMORANDUM OF LAW IN SUPPORT OF WARNER CHILCOTT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. (collectively, "Warner Chilcott" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "Complaint") filed by the Federal Trade Commission ("FTC" or "Plaintiff") in the above-captioned action.

**Table of Contents**

Page

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    Legal Standard ........................................................................................... 3

        A.    The Court's Subject Matter Jurisdiction Over This Action Is Subject To The Article III Case-Or-Controversy Requirement And Mootness Doctrine ................................................................................................. 3

        B.    Warner Chilcott's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Is Brought Pursuant to Rule 12(b)(1) .................................. 6

    II.    Subject Matter Jurisdiction No Longer Exists For The Court To Decide Plaintiff's Claims ...................................................................................... 7

        A.    Warner Chilcott's Irrevocable Waiver Of Exclusivity Renders This Case Moot ................................................................................................ 7

        B.    No Exceptions To The Mootness Doctrine Apply To This Case ............... 9

        C.    There Is No Cognizable Danger Of Future, "Similar And Related" Conduct ................................................................................................. 12

CONCLUSION ................................................................................................................ 14

## Table of Authorities

### Federal Cases

*Am. Fed. of Gov't Employees, AFL-CIO v. Brown*, 866 F. Supp. 16 (D.D.C. 1994) .............. 5, 11

*Board of Pardons v. Allen*, 482 U.S. 369 (1987) .......................................................... 5

*Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979) ................................................. 13

*Comm. in Solidarity With People of El Salvador (CISPES) v. Sessions*, 929 F.2d 742 (D.C. Cir. 1991) ................................................................................................. 6

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) ....................................... 5, 10, 12

*Flast v. Cohen*, 392 U.S. 83 (1968) ........................................................................... 4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................. 5

*In re Kurtzman*, 194 F.3d 54 (2d Cir. 1999) ............................................................... 6

*Land v. Dollar*, 330 U.S. 731 (1947) ......................................................................... 6

*Law Office of Azita Mojarad v. United States Citizenship & Immigration Serv.*, Civ. No. 05-0038 (CKK), 2006 U.S. Dist. LEXIS 17090 (D.D.C. Mar. 25, 2006) ....................... 3

*Mills v. Green*, 159 U.S. 651 (1895) .......................................................................... 4

*Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627 (D.C. Cir. 2002) ................................... 9

*Powell v. McCormack*, 395 U.S. 486 (1969) ............................................................... 4

*Pub. Util. Comm'n of Cal. v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451 (9th Cir. 1996) .......... 10

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................................ 5

*SEC v. Med. Comm. for Human Rights*, 404 U.S. 403 (1972) ......................................... 10

*Sierra Club v. Browner*, 130 F. Supp. 2d 78 (D.D.C. 2001) .......................................... 6

*Sosna v. Iowa*, 419 U.S. 393 (1975) ........................................................................... 5

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ................................. 3, 4

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ........................................ 5, 9, 12

**Federal Statutes**

18 U.S.C.A. § 18a  (2006) ......................................................................................... 2

U.S. Const. art. III, §2................................................................................................ 3

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 6

**Other Authorities**

Erwin Chemerinsky, Federal Jurisdiction, §2.5.2-2.5.5 (3d ed. 1999).......................... 4

## INTRODUCTION

On September 25, 2006, Warner Chilcott *irrevocably waived* all exclusivity provisions in the license and supply agreements (the "Agreements") with Defendant Barr Laboratories, Inc. ("Barr").[1] These are the very provisions that Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") has sought to enjoin in this action. Warner Chilcott's waiver followed the launch of its more convenient chewable version of Ovcon 35, which the company makes at its own facilities and, therefore, does not require to be supplied by another manufacturer. One day after Warner Chilcott's waiver, Barr announced it would introduce a generic version of regular (non-chewable) Ovcon 35 in October 2006.[2] With these developments, the FTC's antitrust claim against Defendants no longer presents any justiciable case or controversy. Accordingly, the FTC's case is moot and must be dismissed for lack of subject matter jurisdiction.

In September 2003, Warner Chilcott and Barr entered into a letter of intent contemplating that Warner Chilcott would receive an option for a five-year exclusive license to Barr's Abbreviated New Drug Application ("ANDA") for a generic version of Warner Chilcott's Ovcon 35 oral contraceptive product. The letter of intent was immediately provided to the FTC as part of a review by the staff of a series of transactions between Warner Chilcott and Barr that were reportable under the notice provisions in the Hart-Scott-Rodino ("HSR") Act. 18 U.S.C.A.

---

[1]    *See* Waiver (Sept. 25, 2006), attached as Exhibit A to the Affidavit of Peter C. Thomas ("Thomas Aff."), submitted in support of Defendants' Motion to Dismiss. All references to "Ex.__" herein refer to exhibits to the Thomas Aff.

[2]    *See* Ex. B, Barr Pharmaceuticals, Inc. Press Release (Sept. 26, 2006), *available at* http://phx.corporate-ir.net/phoenix.zhtml?c=60908&p=irol-newsArticle&ID=909303&highlight=.

1

§ 18a (2006). The FTC inquired about the Ovcon letter of intent, but elected neither to object to nor challenge it.[3]

On March 24, 2004, Warner Chilcott and Barr executed a final option agreement, which implemented the letter of intent. Simultaneously, Warner Chilcott and Barr entered into a "Finished Product Supply Agreement" that provided for Barr to supply Warner Chilcott with Ovcon 35 on an exclusive basis for five years in the event that Warner Chilcott exercised its option for the license to Barr's ANDA. On May 6, 2004, after Barr had received final FDA approval of its ANDA for a generic version of Ovcon 35, Warner Chilcott exercised its option to obtain the exclusive license to Barr's ANDA.

Another year and a half passed before the FTC filed this action, alleging that the exclusive license agreement (the "Exclusive License") violates the antitrust laws. The FTC's Complaint alleges that the Exclusive License is an anticompetitive restraint of trade in violation of Section 5 of the FTC Act because it does not allow Barr to introduce its generic version of Ovcon 35 for a period of five years. *See* First Am. Compl. ¶¶ 62-67. To remedy this alleged violation, the FTC seeks solely equitable relief in the form of a declaration that the Exclusive License violates Section 5 of the FTC Act and a permanent injunction preventing the Defendants from enforcing the Exclusive License and from engaging in "similar and related conduct." First Am. Compl., Sect. X., ¶¶ 1-2.

Although never meritorious, because the Exclusive License was justified by Warner Chilcott's need for a reliable, alternative supplier of Ovcon 35 and because, among other things, Warner Chilcott continued promotion and "sampling" of Ovcon 35 benefited rather than

---

[3]     In February 2004, several months after the statutory waiting period under the HSR Act had expired, staff in the FTC Health Care Division notified the Defendants that they intended to investigate the letter of intent. *See* First Am. Compl. ¶ 45.

harmed consumers, the FTC's claim is now moot.  With Warner Chilcott's irrevocable waiver of the Exclusive License, Barr is now free to introduce a generic version of Ovcon 35.  In fact, Barr has announced that it will do just that with a generic version of Ovcon 35, called "Balziva," in October 2006.  *See* Ex. B.  Any harm the FTC urges this Court to redress is gone.[4]

Defendant Warner Chilcott will respond to the FTC's preliminary injunction motion on October 10, 2006, according to the schedule set by the Court but, as this motion establishes, the resolution of the preliminary injunction motion is wholly unnecessary because this case no longer meets the basic justiciability requirement that it present a live case or controversy.  The Court should dismiss the First Amended Complaint, with prejudice, for lack of subject matter jurisdiction.[5]

## ARGUMENT

I.    LEGAL STANDARD

A.    The Court's Subject Matter Jurisdiction Over This Action Is Subject To The Article III Case-Or-Controversy Requirement And Mootness Doctrine

Article III of the Federal Constitution limits the power of judicial review to "Cases" and "Controversies."  U.S.. Const. art. III, §2; *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980); *Law Office of Azita Mojarad v. United States Citizenship & Immigration Serv.*, Civ. No. 05-0038 (CKK), 2006 U.S. Dist. LEXIS 17090, *14-15 (D.D.C. Mar. 25, 2006) (attached as Ex. C).  The case-or-controversy limitation serves "two

---

[4]    The FTC's recent preliminary injunction motion does not create a fresh controversy but, rather, is also mooted by Warner Chilcott's exclusivity waiver and Barr's imminent launch of Balziva.

[5]    Defendants do not seek to dismiss the related state or private litigations seeking money damages. Thus, the lawfulness of the Exclusive License and any alleged resulting harm will still be litigated before this Court.  The FTC action, however, is moot because there is no longer any "live" case-or-controversy with respect to the FTC's request for equitable relief relating to Warner Chilcott's waiver of the Exclusive License and Barr's imminent introduction of a generic version of regular Ovcon 35.

complementary" purposes:  "It limits the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process,' and it defines the 'role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government.'"  *Geraghty*, 445 U.S. at 396 (*quoting Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

A case fails to meet the Article III case-or-controversy requirement, and thus is moot, when changes in the facts of the case resolve the underlying conflict, such that "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted).  The Supreme Court has framed the case-or-controversy requirement and accompanying mootness doctrine in light of Article III's prohibition against advisory opinions.  *See Flast*, 392 U.S. at 96-97.  The advisory opinion prohibition ensures that cases presented to the court will be "actual controversies," rather than hypothetical legal questions.  *Mills v. Green*, 159 U.S. 651, 653 (1895).  Accordingly, Supreme Court jurisprudence prohibits judicial tribunals from issuing "opinions upon moot questions or abstract propositions, or [ ] decla[ring] principles or rules of law which cannot affect the matter in issue in the case before it."  *Id.*

Although the mootness doctrine serves to ensure that courts do not issue advisory opinions, the doctrine has been tempered to prevent future litigation in certain circumstances. Consequently, the Court has enunciated four exceptions to the mootness doctrine:  (1) collateral consequences; (2) wrongs "capable of repetition yet evading review;" (3) class action suits; and (4) voluntary cessation.  *See* Erwin Chemerinsky, Federal Jurisdiction, §2.5.2-2.5.5 (3d ed. 1999).  Of these four, only the so-called voluntary cessation exception is potentially relevant to

4

this case.[6]  This exception provides that, so long as the offense could recur freely, a case does not

become moot simply because the offender voluntarily ceases the offense.  *United States v. W.T.*

*Grant Co.*, 345 U.S. 629, 632 (1953).  To automatically declare all cases moot when a defendant

voluntarily ceases the conduct at issue may frustrate the "public interest in having the legality of

the practices settled."  *Id*.  Importantly, however, to qualify for the voluntary cessation exception,

there must be a "reasonable expectation that the wrongs will be repeated."  *Id.* at 633.  It is a

defendant's burden to show that it is unreasonable to expect the complained of conduct to be

repeated, should the case be dismissed.  *Id.* at 632.  Nevertheless, it is a plaintiff's burden to

"'satisfy the court that relief is needed' and that 'there exists some cognizable danger of

recurrent violation, something more than the mere possibility which serves to keep the case

alive.'"  *Am. Fed. of Gov't Employees, AFL-CIO v. Brown*, 866 F. Supp. 16, 19 (D.D.C. 1994)

(*quoting W.T. Grant*, 345 U.S. at 633).

　　　　　In addition, if the "interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation," the voluntary cessation exception is inapplicable.

*County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted).  Therefore, if there

---

[6]　　　The collateral consequences exception to the mootness doctrine allows certain claims to proceed
although the plaintiff's primary injury has been resolved.  *See, e.g.*, *Board of Pardons v. Allen*,
482 U.S. 369, 371 n.1 (1987); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370-71 (1982).
For instance, claims for money damages for past harm may proceed although the injurious
conduct has already been enjoined or otherwise has ceased.  *See Coleman*, 455 U.S. 363, 370-71
(1982).  The exception for wrongs that are "capable of repetition yet evading review" refers to
instances where the alleged harm is inherently likely to be sustained by the same plaintiff again,
but end so quickly that it will not remain a live case or controversy before federal litigation is
complete.  *Roe v. Wade* is the textbook example of this exception, because any litigation would
always last longer than the plaintiff's pregnancy term.  410 U.S. 113 (1973).  In *Roe*, the Supreme
Court refused to dismiss plaintiff's case, noting that the plaintiff could always become pregnant
and have her pregnancy end again before another round of litigation could resolve the same
claim.  *Id.* at 125. (citations omitted).  Finally, the class action exception holds that, when
properly certified, class action suits may escape mootness, even where the named plaintiff's
claims are otherwise moot.  *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

is no reasonable expectation that the conduct at issue will be repeated, and the effects of the

alleged violation have been eliminated, a case should be rendered moot where a defendant

voluntarily ceases the conduct prior to the resolution of litigation.

> **B.      Warner Chilcott's Motion To Dismiss For Lack Of Subject Matter
> Jurisdiction Is Brought Pursuant to Rule 12(b)(1)**

Because the mootness of Plaintiff's claims constitutes a defect in the Court's

jurisdiction to hear this case, Warner Chilcott's motion is properly brought before the Court as a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *See, e.g.*, *Sierra Club v. Browner*, 130 F.

Supp. 2d 78, 82 n.6 (D.D.C. 2001) (construing the EPA's motion to dismiss for mootness "as a

motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)" because "the

motion essentially targets this Court's jurisdictional competence to consider this matter") (citing

*In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) ("When a case becomes moot, the federal courts

lack subject matter jurisdiction over the action.") (internal citations and alterations omitted)).

When a Rule 12(b)(1) motion to dismiss is before the Court, it is well-settled that

the Court may make inquiries beyond the pleadings "to inquire into facts pertinent to its

jurisdiction."  *Sierra Club*, 130 F. Supp. 2d at 82 n.6 (citing *Land v. Dollar*, 330 U.S. 731, 735

n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or

by the court on its own motion, . . . the court may inquire, by affidavits or otherwise, into the

facts as they exist.") (citations omitted)); *see also Haase v. Sessions*, 835 F.2d 902, 906-07 (D.C.

Cir. 1987) (noting that a Court deciding a 12(b)(1) motion may "make appropriate inquiry

beyond the pleadings to satisfy itself on authority to entertain the case.") (internal quotation

marks omitted); *Comm. in Solidarity With People of El Salvador (CISPES) v. Sessions*, 929 F.2d

742, 745 & n.4 (D.C. Cir. 1991) (noting that, although "a dismissal for failure to state a claim is

improper if matters outside the pleadings are presented to and not excluded by the court . . . .

[t]here is no such constraint on the court when it is considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)") (internal quotations omitted).

## II.    SUBJECT MATTER JURISDICTION NO LONGER EXISTS FOR THE COURT TO DECIDE PLAINTIFF'S CLAIMS

Given recent events, a "live" case-or-controversy no longer exists and the claims alleged by the FTC are now moot. Furthermore, none of the exceptions to the mootness doctrine are applicable to this case. As such, this case must now be dismissed for lack of subject matter jurisdiction.

### A.    Warner Chilcott's Irrevocable Waiver Of Exclusivity Renders This Case Moot

The FTC's Complaint centers on one issue: the legality of the Exclusive License arrangement between Defendants Warner Chilcott and Barr. The FTC alleges that the Agreement is an anticompetitive restraint of trade in the form of a horizontal agreement not to compete, and thus violates Section 5 of the FTC Act, because it does not permit Barr to introduce a generic version of Ovcon 35 for a period of five years from May 2004. *See* First Am. Compl. ¶¶ 62-67. The FTC seeks only equitable relief in the form of: (1) a declaration that the Agreement violates Section 5 of the FTC Act; (2) a permanent injunction preventing the Defendants from enforcing the Agreement and from engaging in "similar and related conduct;" and (3) "such other equitable relief as the Court finds necessary . . . ." First Am. Compl., Sec. X., ¶¶ 1-3.

As the FTC recognizes, Warner Chilcott has been in the process of developing a chewable version of its Ovcon 35 oral contraceptive for many years. *See* First Am. Compl. ¶¶

7

39, 40.[7]  As the FTC also recognizes, Warner Chilcott has always anticipated that its supply

needs for regular Ovcon 35 may change upon the successful launch of its chewable version.  *See*

*id.*  On September 8, 2006, Warner Chilcott issued a "trade notice" that Ovcon 35 Fe—the trade

name for the chewable version of Ovcon 35—was now available and would replace Ovcon 35.

*See* Ex. D, Warner Chilcott Trade Notice (Sept. 8, 2006).  With the launch of chewable Ovcon

35 Fe (which Warner Chilcott manufactures at its own facilities in Puerto Rico and therefore

does not require to be supplied by another manufacturer), Warner Chilcott no longer needed an

exclusive license and supply arrangement with Barr.  Thus, on September 25, 2006, Warner

Chilcott unilaterally and irrevocably executed a waiver that fully released Barr from all

exclusivity provisions in the agreements between the parties.  *See* Ex. A.

            With Warner Chilcott's waiver of the exclusivity provisions in the Agreement, the

facts of this case have fundamentally changed.  A justiciable case or controversy no longer exists

between the parties.  The conduct of which Plaintiff complains has now ceased—as of

September 25, 2006, Barr has been free to market a generic version of Ovcon, or supply any

other competitor with a generic version of Ovcon.  In fact, only one day later, Barr announced

that it will launch a generic version of Ovcon, called Balziva, in October 2006.  *See* Ex. B.  Thus,

not only does Barr have the ability to introduce a generic version of Ovcon—which is the

primary relief sought by the FTC—Barr will, in fact, now enter the market within a matter of

weeks.

---

[7]         Warner Chilcott's chewable version of Ovcon is a unique product in the large and crowded
combined hormonal contraceptive market.  The chewable form may provide greater convenience
and improved compliance, and the FDA, after approving the product in 2004, touted its approval
of the chewable Ovcon as providing another "alternative to the many types of oral contraceptives
currently in the market."  FDA Talk Paper, FDA Approves Ovcon 35 as the First Chewable Oral
Contraceptive Tablet for Women (Nov. 14, 2003), *available at*,
http://www.fda.gov/bbs/topics/ANSWERS/2003/ANS01260.html.

In short, not only has the FTC's goal of ensuring the *potential* for competition from Barr's generic Ovcon 35 been achieved but, moreover, *actual competition* from a generic version of Ovcon now will take place. Lacking any actual, ongoing controversy, any decision in this case "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Labs.*, 276 F.3d 627, 631 (D.C. Cir. 2002). Accordingly, the FTC's lawsuit should be dismissed for lack of subject matter jurisdiction.

**B.     No Exceptions To The Mootness Doctrine Apply To This Case**

None of the aforementioned exceptions to the mootness doctrine apply here. Of the four, voluntary cessation is the only exception that is arguably relevant.[8] By irrevocably waiving all of the exclusivity provisions of the license and supply arrangements with Barr, Warner Chilcott has voluntarily ceased its alleged illegal conduct. Although it may be *theoretically* possible for Defendants, having terminated the Exclusive License, to agree to renew those exclusivity provisions upon the dismissal of this case, any recurrence is highly improbable given the facts of this case. There simply can be no reasonable expectation that the alleged wrongs here will be repeated, as is required for the voluntary cessation exception to apply. *See W.T. Grant*, 345 U.S. at 632-33.

---

[8]     The collateral consequences exception does not apply because no valid claim remains in light of the new developments described above. The FTC sought only a declaratory judgment that the Agreement is illegal and injunctive relief to remedy the effects of the agreement. Monetary damages were not sought. As there is no longer any judgment to declare or any relief to grant, there are no collateral consequences. This case is also not "capable of repetition yet evading review" because the FTC can easily seek injunctive relief again if the parties were to enter into another exclusive license and supply agreement. Unlike disputes that fall under this exception, such as those involving pregnancies or labor strikes, the alleged offense in this case normally continues beyond just days or even months, and is not of a nature that would end quickly enough to evade judicial review before the federal litigation process is complete. Of course, the case at issue is not a class action suit, thus eliminating the applicability of the third exception to the mootness doctrine.

9

Courts have routinely declared cases moot when practical or economic reality weighs heavily against repetition of the alleged offense. *Cf. SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 406-07 (1972) (unreasonable to assume that a public company would repeat the exclusion of the same proxy statement proposal in the future, given that the proposal was soundly defeated and would likely be soundly defeated again); *Davis*, 440 U.S. at 632-34 (1979) (even though it was technically possible for the County to resurrect a challenged firefighter examination at a later point, it was unlikely to do so because the emergency shortage of firefighters at the time was unique and had since been resolved through a new and more efficient job screening system); *Pub. Util. Comm'n of Cal. v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996) (in dispute over jurisdiction between state and federal energy regulators, case declared moot when a gas pipeline company announced that it was economically infeasible under current market conditions to proceed with the expansion plans that triggered the regulatory jurisdiction dispute).

In these circumstances, it would be economically irrational for the parties to resurrect any Exclusive License. From the perspective of Warner Chilcott, it would make no business sense to recreate an exclusive relationship with Barr with respect to a product for which promotional efforts have dramatically changed. With the launch of its more convenient, patented, chewable version of Ovcon 35, Warner Chilcott, understandably, plans to actively detail and promote this product to physicians and patients. Even if the company were to have future needs for regular Ovcon 35, it simply would make no sense for Warner Chilcott to continue active promotion of regular Ovcon 35 to physicians and patients because of the risk of substantial confusion by both. Whatever Warner Chilcott's supply needs for regular Ovcon 35 in the future may be, they can be met unquestionably through a non-exclusive supply relationship.

10

Moreover, although the chewable form of Ovcon may face a threat of generic entry someday,

Warner Chilcott will not need to enter into an exclusive license and supply arrangement with the

manufacturer of that generic because Warner Chilcott now manufactures the chewable version in

its own facilities in Puerto Rico.  In stark contrast to the supply shortages it experienced with

Bristo-Myers Squibb and which required Warner Chilcott to find a reliable, alternative supplier

of regular Ovcon 35, Warner Chilcott simply will have no need to look for an alternative supplier

of the chewable version of Ovcon.

       Nor would it make any economic sense for Barr to enter into exclusive

arrangements with Warner Chilcott in the future.  Barr has publicly announced that it will enter

the oral contraceptive market with its generic version of regular Ovcon 35, called Balziva.  *See*

Ex. B.  As a supplier, Barr has made regular Ovcon 35 and shipped the product, *in bulk*, to

Warner Chilcott, which has then packaged the product at its facility.  To introduce Balziva, Barr

must obviously invest in its manufacturing facilities in order to label and package its generic

product.  To reverse course after the dismissal of this litigation would mean forfeiting those

investments.[9]

       In addition, although the "mere profession that defendants have no intention to

revive challenged practices, is not alone sufficient to moot a case, it is an important factor to be

considered in determining whether a live controversy exist."  *Brown*, 866 F. Supp. at 19.  Here,

the Defendants have ceased their alleged illegal activity not through mere words.  Rather,

Defendants' voluntary cessation has been accompanied by concrete action:  Warner Chilcott has

---

[9]      And, should this case be dismissed, it would make **no** sense for Barr to abandon its plans to
introduce a generic version of Ovcon and thereby forgo the revenues it expects to generate by
selling that generic product.

waived the exclusivity provisions of the parties' agreements and Barr is preparing to launch its generic product within this month.

Finally, as to the second prong of the voluntary cessation analysis, there can be no question that the alleged effects of the conduct have been eliminated. Recognizing that it could not ask this Court to force Barr to enter the market with a generic version of Ovcon 35, the FTC's complaint sought only to prevent the parties from enforcing the Exclusive License in order to allow Barr to enter the market with a generic Ovcon 35 if it so chose. The alleged effect of the Exclusive License—the inability of Barr to enter with an allegedly lower cost generic Ovcon equivalent—unquestionably has been eliminated with Warner Chilcott's waiver of exclusivity. Not only is Barr now free to enter the market with its generic Balziva product, Barr will *actually* enter the market in October 2006. Thus, there is simply no dispute that any alleged anticompetitive effects from the Agreement will now be "completely and irrevocably eradicated." *Davis*, 440 U.S. at 631.

### C.    There Is No Cognizable Danger Of Future, "Similar And Related" Conduct

While neither Warner Chilcott nor Barr has any economic incentive to renew the complained of conduct specified in the FTC's Complaint, *i.e.*, the Exclusive License, it would also be unreasonable to expect the occurrence of future, "similar and related conduct," which the FTC complaint also asks this Court to enjoin. First. Am. Compl., Sec. X, ¶ 2. The Supreme Court has addressed the question of whether a case may proceed in order to enjoin future violations, "even without a showing of past wrongs." *W.T. Grant Co.*, 345 U.S. at 633. In order to allow this case to continue solely in the name of enjoining future, hypothetical "similar and related" conduct, the Court must determine "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case

12

alive." *Id.* Here, there is no such cognizable danger. Certainly, the FTC cannot point to any plans on the part of either Defendant to enter into "similar or related" agreements. The FTC has not alleged a pattern of similar conduct on the part of the Defendants, nor can it. Indeed, it is undisputed that, while Warner Chilcott previously did not have the capability to manufacture its own products, its recent acquisition of a manufacturing plant (in a divestiture by Pfizer ordered by the FTC) makes it even more unlikely that Warner Chilcott would have any need to enter to into any "similar or related" agreements in the future.[10]

Moreover, there is simply no basis in the law to assume that the type of agreement challenged by the FTC here would always be a violation of the antitrust laws. Only agreements that "facially appear[] to be [of the type that] would always or almost always tend to restrict competition and decrease output" are deemed *per se* violations of the antitrust laws. *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 19-20 (1979). Although the FTC has generally alleged that the Exclusive License is anticompetitive on its face, tellingly, the FTC has *not* alleged that the Exclusive License is a *per se* violation. That the FTC has not sought *per se* treatment is not surprising, the Merger Division of the FTC reviewed the terms of the Exclusive License seven months before the option was exercised and decided not to challenge the agreement. Given the mootness of a challenge to the Exclusive License itself, it is difficult to comprehend how the FTC could seek to proceed with this action in order to enjoin all future "similar and related" conduct by the Defendants, when the FTC cannot even allege that the Exclusive License itself is a *per se* violation. To proceed in order to enjoin future, hypothetical "similar and related" conduct would equate to seeking the very definition of an advisory opinion.

---

[10]    It is not disputed that Warner Chilcott now operates a pharmaceutical manufacturing plant in Fajardo, Puerto Rico, where the chewable Ovcon 35 Fe product is manufactured.

As no justiciable case or controversy now exists, nor is there a cognizable danger of any alleged future violations in the form of conduct "similar and related" to the challenged Agreement, this case must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth above, Plaintiff FTC's First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

October 5, 2006

> _/s/  Peter C. Thomas_
> Peter C. Thomas (D.C. Bar # 495928)
> Andrew M. Lacy (D.C. Bar # 496644)
> SIMPSON THACHER & BARTLETT LLP
> 601 Pennsylvania Avenue, N.W.
> North Building
> Washington, District of Columbia 20004
> (202) 220-7700
> (202) 220-7702 (fax)
>
>
> Charles E. Koob, _pro hac vice_
> SIMPSON THACHER & BARTLETT LLP
> 425 Lexington Avenue
> New York, New York 10017-3954
> (212) 455-2000
> (212) 455-2502 (fax)
>
> _Counsel for Warner Chilcott Holdings Company III,_
> _Ltd, Warner Chilcott Corporation, Warner Chilcott_
> _(US) Inc., and Warner Chilcott Company, Inc._

14