**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>              Plaintiff,<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.<br><br>              Defendants. | Civil Action No. 1:05-CV-2179-CKK |

## PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANT BARR PHARMACEUTICALS' MOTION TO DISMISS FTC COMPLAINT AS MOOT

Warner Chilcott terminated its unlawful non-compete agreement with Barr when faced with the prospect of a preliminary injunction. On September 25, 2006, after learning that Warner Chilcott had told customers the company was replacing regular Ovcon with a new, chewable version, the FTC sought interim relief to keep regular Ovcon on the market and available on the same basis as the new product. The following day, in a press release announcing the FTC's motion, Warner Chilcott advised that it had just terminated the "exclusivity provisions" in its agreements with Barr – the provisions that prevented Barr from selling its generic version of Ovcon.[1] The same day, Barr issued a statement that it intended to launch its generic version of Ovcon in October 2006. Based on these developments, Barr claims the FTC's case is now moot.

Barr's mootness argument, however, is premised on fundamental misstatements of fact and law. To begin with, Barr claims that no live controversy remains because, with the

---

[1]     *See* Ex. A (Press Release, Warner Chilcott, *The FTC Files a New Motion in Connection with Ongoing Ovcon Litigation*, (Sept. 26, 2006), http://ir.wcrx.com/releasedetail. cfm?ReleaseID=212210.

elimination of the non-compete agreement, the FTC has obtained all of the relief it sought. But

Barr's repeated insistence that the FTC sought only the elimination of the exclusivity provisions

– *see, e.g.*, Defendant Barr Pharmaceuticals' Motion to Dismiss FTC Complaint as Moot

(*hereinafter* "Barr Br.") at 3 ("In other words, the FTC only seeks a Court order rendering the

Defendants' license agreement non-exclusive."); at 4 ("Because the FTC sought only to enjoin

Barr and Warner Chilcott from operating under an exclusive license arrangement, . . .); at 5 ("The

FTC's complaint only seeks to enjoin Barr and Warner Chilcott from operating under an

exclusive License and Supply Agreement.")[2] – is demonstrably false. As is evident from the

FTC Complaint, the Commission has asked the Court not only to enjoin the defendants from

maintaining their agreement not compete with regard to Ovcon, but also to prevent them from

engaging in "similar and related conduct," and to provide other necessary equitable relief to

prevent recurrence of the defendants' violation of law (Compl., Section X, ¶¶ 2-3). Such a

request is proper, for, as this Court observed in *New York v. Microsoft Corp.*, "there is ample

precedent to support the imposition of conduct remedies which go beyond the specific acts found

to be anticompetitive." 224 F. Supp. 2d 76, 110 (D.D.C. 2002), *aff'd sub nom. Massachusetts v.

Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).

Next, Barr misstates the law, telling the Court that "[t]o avoid dismissal for mootness, the

FTC must [show] some cognizable danger of recurrent violation." Barr Br. at 6 (quotation

---

[2]      Barr finally acknowledges in a footnote that the FTC has sought additional relief
(at 7 n.5), but then goes on to assert otherwise in text (at 8) ("the FTC sought only to prevent the
parties from enforcing the exclusivity provisions").

omitted).[3]  It is well-settled that it is the defendant's burden to establish that voluntary cessation

of the challenged conduct moots a case, and it is a "heavy burden" to meet, requiring a showing

that it is "'absolutely clear'" that the allegedly wrongful behavior "'could not reasonably be

expected to recur.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199,

203 (1968)).

This presumption that voluntary cessation of illegal conduct does not moot a case is

particularly powerful in government law enforcement actions against private defendants.  As the

Supreme Court observed in *United States v. W.T. Grant*, 345 U.S. 629, 632 (1953), "the courts

have rightly refused to grant defendants such a powerful weapon against public law

enforcement."  Ignoring its heavy burden, however, Barr offers nothing more than a cursory

assertion in a footnote that defendants will not engage in similar unlawful conduct in the future,

due to unspecified "practical and economic realities existent here."  Barr Br. at 7 n.5.  Even

Barr's narrow claim that the challenged agreement with Warner Chilcott will not recur cannot be

sustained on the facts.

In short, Barr's claim that this Court lacks the power to adjudicate the FTC's case and

grant injunctive relief to protect consumers falls far short of what could conceivably justify

dismissal here.

---

[3]     Although Barr purports to extract this legal standard for mootness from *Am. Fed'n of Gov't Employees, AFL-CIO v. Brown*, that decision clearly states that, where voluntary cessation of unlawful conduct is claimed to moot a case, "Defendants' burden is a heavy one" and requires a showing that there is "no reasonable expectation that the wrong will be repeated." 866 F. Supp. 16, 19 (D.D.C. 1994) (quotations and citations omitted).

I.    **Defendants Bear a Heavy Burden to Establish That Voluntary Cessation of Allegedly Unlawful Conduct Renders a Case Moot**

The Supreme Court has long held that a defendant's mere voluntary cessation of allegedly illegal conduct does not make the case moot. *See W.T. Grant*, 345 U.S. at 632. Under the "stringent" voluntary cessation doctrine, a case is moot only if the defendant can satisfy "the heavy burden" to show that it is "absolutely clear" that "the allegedly wrongful behavior could not reasonably be expected to recur." *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203. The reason for this strict doctrine, as the Supreme Court explained in *W.T. Grant*, is that otherwise courts would be forced to leave the defendant "free to return to his old ways." 345 U.S. at 632. More recently, Justice Scalia explained that the "heightened showing" required under the voluntary cessation doctrine arises because "we have sensibly concluded that there is reason to be skeptical that cessation of violation means cessation of live controversy." *Friends of the Earth*, 528 U.S. at 214 (dissenting on other grounds).

Courts are particularly skeptical of mootness claims when private defendants claim their voluntary cessation of the challenged practices moots a government enforcement action. In such cases, there is "a public interest in having the legality of the practices settled," which "militates against a mootness conclusion." *W.T. Grant*, 345 U.S. at 632. "For to say that the case has become moot means that the defendant is entitled to dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." *Id.* (citations omitted).[4] Thus, while defendants in government enforcement

---

[4]    *See also* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.5 (2006 Supp.) at 325 (nature of plaintiff shapes judgments about recurrence, and mootness "may be rejected more readily in an action to protect broad public interests rather than specific private interests."). In addition, "[t]he process of

actions frequently claim that discontinuance of the challenged conduct renders the action moot, such claims are routinely rejected.[5]

Barr, however, has brushed aside settled law governing the effect of voluntary cessation on the Court's power to grant injunctive relief. Instead, it has attempted to avail itself of the separate and distinct legal standard applicable to the Court's discretionary decision whether to grant such relief.[6] *See* Barr Br. at 6, 7 n.5. Certainly, if a violation is found, the plaintiff must persuade the court that the injunctive relief it seeks is warranted. *W.T. Grant*, 345 U.S. at 633 (plaintiff must show a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."). But this fact-intensive issue goes not to the court's power to hear the case, but to its broad discretion to fashion an appropriate remedy for a

---

prediction is also shaped by the character of the defendant – claims of discontinuance by public officials are more apt to be trusted than like claims by private defendants." *Id.* This tendency is reflected in cases Barr cites such as *County of Los Angeles v. Davis*, 440 U.S. 625 (1979) (civil rights action against county) and *Am. Fed'n of Gov't Employees, AFL-CIO v. Brown*, 866 F. Supp. 16 (D.D.C. 1994) (union suit against Department of Veterans Affairs).

[5]    *See, e.g.*, *United States v. Generix Drug Corp.*, 460 U.S. 453, 456 n.6 (1983) (drug distributor's promise to sell only FDA-approved drugs in the future, coupled with expiration of products containing disputed active ingredient, did not moot action to enjoin sale of unapproved products); *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 202-03 (dissolution of defendant trade association insufficient to moot Sherman Act case); *W.T. Grant*, 345 U.S. at 633 (resignation of corporate directors, terminating illegal interlocks, did not moot case); *Donovan v. Cunningham*, 716 F.2d 1455, 1460-62 (5th Cir. 1983) (Secretary of Labor's case alleging violations of law with regard to employee stock ownership plan not mooted by dissolution of plan and assertions that defendants did not plan to serve as plan fiduciaries in future); *Rubbermaid, Inc. v. FTC*, 575 F.2d 1169, 1172-73 (6th Cir 1978) (discontinuance of unfair trade practices did not moot case).

[6]    *See W.T. Grant*, 345 U.S. at 633 (voluntary termination of interlocking corporate directorates did not render case moot, but no abuse of discretion in district court's refusal to grant injunctive relief); 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.5 at 325 (*W.T. Grant* "clearly distinguished" between mootness and remedial discretion).

violation. *Id.* ("The chancellor's decision is based on all the circumstances; his discretion is necessarily broad, and a strong showing of abuse must be made to reverse it."). *See also Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1207, 1214 (D.C. Cir. 2004).

Barr has not moved for summary judgment on the discretionary remedy issue and to do so would be premature, since discovery is ongoing.[7]   Accordingly, the only issue raised by Barr's motion is its claim that Warner Chilcott's voluntary termination of the challenged agreement deprives the Court of the power to hear the FTC's enforcement action.  Thus, the only relevant legal standard is the one applicable to mootness, which requires Barr to show that the likelihood of further unlawful conduct is so remote as to require dismissal of the FTC's case.

## II.    Barr Has Failed to Show That There Is No Reasonable Expectation of a Recurrent Violation

To support its claim of mootness, Barr points to Warner Chilcott's voluntary abandonment of its agreement with Barr preventing Barr's launch of its generic Ovcon, coupled with supposed "changing market conditions" that purportedly make revival of that agreement economically unattractive for both defendants.  These assertions are insufficient to make the FTC's enforcement action moot.

First, as noted above, the injunctive relief the FTC seeks against Barr is not limited to eliminating the challenged agreement not to compete with regard to Ovcon.  Rather, the Commission's complaint also seeks to enjoin the defendants from similar violations in the future.

---

[7]      A motion to dismiss on this issue (which would arise under Fed. R. Civ. P. 12(b)(6), rather than Fed. R. Civ. P. 12(b)(1) since it does not go to the court's jurisdiction), would be even more difficult to sustain, because Barr would have to show that no set of facts could be proved that would support the FTC's claim for injunctive relief. *See, e.g., SEC v. Nat'l Student Mktg. Corp.,* 360 F. Supp. 284, 296-97 (D.D.C. 1973).

Barr offers no evidence that it would be unlikely to engage in similar conduct in the future. This failure alone dooms its claim of mootness, because – at least in government enforcement actions to protect the public interest – the concern is with repeated violations of the same type, not merely repetition of precisely the same conduct, with the same parties, covering the same subject matter. *See TRW, Inc. v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981) (The Supreme Court's decisions in *W.T. Grant* and *Concentrated Phosphate* show mootness concern is about repeated violations of the same type, not merely recurrence of identical conduct).[8]

Indeed, given the facts here, Barr simply has no persuasive argument that the likelihood that it would engage in any similar agreement in the future is so remote as to compel dismissal of the complaint. There have been no changes in market conditions that would eliminate Barr's ability or incentive to enter into such agreements not to compete or that would otherwise make a similar unlawful agreement unlikely. Barr continues to develop and market both generic and branded pharmaceutical products. Furthermore, the circumstances that gave rise to Barr's unlawful agreement with Warner Chilcott – an imminent threat of generic entry that would drastically reduce the branded drug seller's revenues – are not unique to Ovcon. Barr currently has pending applications seeking FDA approval to market generic versions of branded products where patent protection has expired. *See* Ex. B (under seal).

In addition, Barr has not disavowed its prior conduct. The most it can muster is to say "there is nothing to suggest" that either Barr or Warner Chilcott "plan" to enter into similar agreements in the future. Barr Br. at 7 n.5. Moreover, as the Commission's complaint points out

---

[8]    *See also United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945) (case not moot because "we are by no means persuaded that [defendant] . . . will not enter into another 'cartel'").

(¶¶ 45-46), the defendants entered into their March 2004 agreement after having been advised

that FTC staff was investigating their proposed arrangement regarding Ovcon because of

concerns that, if consummated, the agreement would significantly harm competition. In sum,

there are simply no circumstances sufficient to overcome the presumption that Barr's willingness

to accept Warner Chilcott's $20 million payment and convert from a competitor to a non-

competing "supplier" of Ovcon creates a non-trivial risk that it would enter into a similar

agreement in the future.

Indeed, even Barr's narrow claim that neither defendant has any economic incentive to

revive a non-compete agreement with regard to Ovcon is unpersuasive. *See Concentrated*

*Phosphate Exp. Ass'n*, 393 U.S. at 203 (defendants' statement that it would be "uneconomical"

for them to engage further in wrongful behavior "cannot suffice" to satisfy their burden of

mootness). Barr's argument concerning Warner Chilcott is predicated on the assertion that

Ovcon is "a product that Warner Chilcott no longer wishes to sell." Barr Br. at 7. But it is far

from clear that Warner Chilcott will not start selling regular Ovcon again. Although Barr points

to a September 8, 2006 "trade notice" announcing discontinuation of regular Ovcon, following

Barr's announcement that it planned to launch its generic Ovcon in October, Warner Chilcott has

publicly stated that it intends to revise its previous plans regarding distribution of regular Ovcon.[9]

---

[9]     Barr's announcement prompted Warner Chilcott to hold a public conference call
the following morning, during which Warner Chilcott CEO Roger Boissonneault stated: "The
speed with which Barr intends to launch a generic version of Ovcon 35 surprised us and has
caused us to revise our tactics with respect to the promotion of Ovcon Chewable and the
distribution of Ovcon 35." Ex. C (Transcript of Warner Chilcott Investor Conference Call (Sept.
27, 2006) at 7).

Barr's claim that it would make no economic sense for it to waste investments in labeling and packaging capacity for generic Ovcon or to forgo revenues that it could earn from selling generic Ovcon is belied by its own prior conduct. Barr already agreed once to forgo revenues from selling generic Ovcon in exchange for payments from Warner Chilcott. Barr offers nothing to suggest that Warner Chilcott could not make a sufficiently attractive offer to induce Barr to refrain from selling generic Ovcon or to limit its competition in some fashion (and, as noted above, the suggestion that Warner Chilcott clearly could have no incentive to make such an offer lacks a sound factual basis).[10]

Finally, in assessing the risk of a recurrent violation, the Court can properly take into account the nature and magnitude of the harm to consumers that would result from such a recurrence and the prospects for preventing such harm with a future lawsuit. *See Adams v. Bowater Inc.*, 313 F.3d 611 (1st Cir. 2002) (equitable considerations may tip balance on assessment of likelihood of recurrence); 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.5 at 325. In this case, such considerations – in particular the likelihood a future lawsuit could not adequately protect consumers from the direct and immediate injury caused by unlawful denial of access to generic drugs – further support the conclusion that this case is not moot.

---

[10] The absence of facts indicating that it would be economically "infeasible" to repeat the challenged conduct by itself shows that the cases that Barr invokes to support its changed market conditions argument – *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403 (1972) and *Pub. Util. of Cal. v. Federal Energy Regulatory Commission*, 100 F.3d 1451 (9th Cir. 1996) – do not support the mootness claim here. Moreover, neither of these cases involved a government enforcement action against private defendants, a circumstance where courts are extremely reluctant to find voluntary discontinuance of wrongful conduct moots claims for injunctive relief. *See supra* at 3.

Because Barr's assertions are insufficient to satisfy its burden on its claim of mootness, the FTC requests that motion to dismiss be denied.

Respectfully submitted,

Dated: October 20, 2006

*Bradley S. Albert*

Markus H. Meier (DC Bar # 459715)
Bradley S. Albert
Thomas H. Brock (DC Bar # 939207)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20580
Telephone: (202) 326-3759
Facsimile: (202) 326-3384

Counsel for Plaintiff
Federal Trade Commission

10