# EXHIBIT C

# OFFICIAL TRANSCRIPT PROCEEDING

# FEDERAL TRADE COMMISSION

| | |
|---|---|
| MATTER NO. | 0410034 |
| TITLE | FTC, ET AL. v. WARNER CHILCOTT HOLDINGS COMPANY III, LTD., ET AL. |
| DATE | RECORDED: SEPTEMBER 27, 2006<br>TRANSCRIBED: OCTOBER 17, 2006 |
| PAGES | 1 THROUGH 11 |

## WARNER CHILCOTT INVESTOR CONFERENCE CALL

FOR THE RECORD, INC.
603 POST OFFICE ROAD, SUITE 309
WALDORF, MARYLAND 20602
(301)870-8025

1

1                    FEDERAL TRADE COMMISSION

2                         I N D E X

3

4    CONFERENCE CALL:                                PAGE:

5    Warner Chilcott Investor Call                     3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

```
 1                  FEDERAL TRADE COMMISSION
 2
 3     In the Matter of:            )
 4     FTC, et al. v. Warner Chilcott)  Matter No. 0410034
 5     Holdings Company, III, Ltd.,  )
 6     et al.                        )
 7     -------------------------------)
 8                                    September 27, 2006
 9
10
11
12
13          The following transcript was produced from a
14     digital file provided to For The Record, Inc. on October
15     17, 2006.
16
17
18
19
20
21
22
23
24
25
```

3

1                P R O C E E D I N G S

2                    -   -   -   -   -

3          MS. WILD:  This is Rebecca Wild, Investigator

4    with the Colorado Attorney General's Office.  Today's

5    date is September 27th, 2006.  The time is approximately

6    11:56 a.m.  I'm calling the Warner Chilcott Investor

7    Conference Call that was recorded on this date and it is

8    available for review.  That number is 888-215-1533, and I

9    will be recording this call.

10   _____

11          **WARNER CHILCOTT INVESTOR CONFERENCE CALL**

12          MALE RECORDING:  Good day, and welcome to the

13   Warner Chilcott Conference Call presented on Wednesday,

14   September 27th, 2006.  At any time during the replay, you

15   may pause, fast forward or back up the program using a

16   simple keystroke.  Please take a moment to write this

17   down.

18          To pause, press the eight on your touchtone

19   phone; to fast forward, press the nine; and to back up,

20   press the seven.

21              **(Brief pause.)**

22          MALE OPERATOR:  Good morning, ladies and

23   gentlemen, and welcome to today's teleconference.

24   Currently, all sites are on the conference line in the

25   listen only mode.  Please note this call may be recorded.

4

1       Right now, I'd like to turn the call over to
2  Izumi Hara.
3       Go ahead, please.
4       MS. HARA:  Thank you.  My name is Izumi Hara.
5  I'm General Counsel of Warner Chilcott.  We've received a
6  lot of questions about the sequence of events around the
7  Monday evening FTC posting for preliminary injunction,
8  our decision to terminate the exclusivity provision of
9  our Ovcon supply agreement with Barr, and Barr's
10 announcement that they intend to launch a generic version
11 of Ovcon 35.
12      We are limited in what we can say on this call
13 because we are in the quiet period following the closing
14 of our IPO and because of the ongoing FTC litigation.  As
15 a result, we will not be able to have a question and
16 answer session at this time.  But we thought it is
17 important that we provide you with a description of how
18 the events unfolded over the course of Monday and Tuesday
19 and our strategy for responding to Barr's announcement.
20      During the course of this presentation,
21 management may make forward-looking statements, including
22 statements that express the company's or management's
23 beliefs or expectations regarding the impact of Barr's
24 launch of a generic version of Ovcon 35.
25      A number of risks and uncertainties exist that

5

1    could cause results to differ materially from the results
2    reflected in these forward-looking statements.  These
3    statements should be considered in conjunction with the
4    risk factors in the company's prospectus filed with the
5    Securities and Exchange Commission.
6                Statements made during this presentation are
7    accurate only as of today.  The company undertakes no
8    obligation to update any of the forward-looking
9    information included in this call as a result of new
10   information, future events, changed expectations or other
11   developments.
12               With that, I'm going to turn it over to Roger
13   Boissonneault, our CEO.
14               MR. BOISSONNEAULT:  Thanks, Izumi.  I'm going
15   to try to run you through the sequence of events that
16   have occurred over the last two days, and then I'll turn
17   it over to Paul to put it in some financial framework.
18               Up until Monday, the FTC case was proceeding on
19   a rather routine basis.  Deposition discoveries were
20   ongoing and we felt that discovery was yielding
21   information that was favorable to our position.  In fact,
22   I was on the train to Washington, D.C. for a scheduled
23   deposition when our outside counsel received a call from
24   the FTC informing him that the FTC would be filing the
25   proposed preliminary injunction late in the day on

6

1    Monday.
2        We were surprised both at the FTC plan to file
3    the motion and by the relief that the FTC was requesting
4    from the Court. We understand that the relief that was
5    requested was unprecedented. At the same time, we
6    understand that it is difficult to predict how a court
7    will rule on this kind of motion.
8        We considered the risks posed by the
9    preliminary injunction motion and the time in which it
10    would become effective. As we disclosed in the
11    prospectus, we knew that, at some point, we would have to
12    review the exclusive license supply agreements with Barr,
13    in light of the launch of Ovcon Chewable.
14        As a result of the proposed preliminary
15    injunction, we accelerated our review of the Barr
16    agreements and decided that we should terminate the
17    exclusivity provision and put the FTC on notion that we
18    would have -- that we would move to have the entire case
19    dismissed. As you know, we terminated the exclusivity
20    provision of the agreement late Monday.
21        Because we were in the process of completing
22    our IPO, we were compelled to make this information
23    public as soon as we found out about it. Accordingly, we
24    issued a press release early Tuesday morning.
25        Midday Tuesday, we learned that Barr had issued

Case 1:05-cv-02179-CKK    Document 88-4    Filed 10/20/2006    Page 9 of 13

7

```
 1      their press release announcing their intention to launch
 2      a generic Ovcon.
 3              Although we knew that making our agreements
 4      with Barr non-exclusive meant that Barr might launch a
 5      generic, we did not anticipate they would launch as early
 6      as October.  In light of these events, we asked the FTC
 7      to withdraw their motion for preliminary injunction.
 8              The speed with which Barr intends to launch a
 9      generic version of Ovcon 35 surprised us and has caused
10      us to revise our tactics with respect to the promotion of
11      Ovcon Chewable and the distribution of Ovcon 35.
12              We will focus our sales forces and other
13      efforts on building equity around the Ovcon FE Chewable
14      product.  Based on a new set of assumptions, the
15      conversion of the oral Ovcon 35 franchise to Ovcon FE
16      Chewable will not be the straightforward process we had
17      been expecting in discussion with many of you over the
18      last several weeks.  Instead, we will need to build a
19      share of Ovcon Chewable based on its own unique benefits.
20              As a result, we are evaluating our sales and
21      profit expectations for the next several years based on
22      the expectation of a generic competitor to Ovcon 35
23      beginning in late October and a slower ramp of new
24      prescriptions and total prescriptions market share for
25      our new Ovcon FE Chewable product.
```

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

8

1   While it is difficult to predict the impact of
2   Barr's decision to launch a generic version of Ovcon 35,
3   we are optimistic that the patent-protected position of
4   Ovcon Chewable, combined with its unique benefits, will
5   reduce that impact.
6        At this point, I'd like to turn it over to Paul
7   so he can put it in some type of financial framework.
8        MR. HERENDEEN: Thanks, Roger. Good morning.
9   It's always difficult to predict the impact that the
10  introduction of a generic can have on a -- on a
11  pharmaceutical product, and in our case here, that
12  difficulty is compounded here, as we're very early in the
13  process of introducing our new Ovcon Chew and we need to
14  project the likely market acceptance for this new
15  product.
16       Accordingly, any projection of impact is
17  subject to significant uncertainty based on factors
18  specific to Ovcon, particularly the market acceptance of
19  Ovcon Chew, and the actual results that we achieve may
20  differ materially.
21       Ovcon represented approximately $47 million of
22  our revenue in the first six months of 2006. Typically,
23  the introduction of a generic competitor to an oral
24  contraceptive results in a drop in dollar revenue of
25  approximately 50 percent in the first year following the

9

1  generic introduction.  In our case, however, one also
2  needs to factor in how quickly Ovcon -- Ovcon Chew will
3  be able to capture market share, as our chewable is not
4  expected to face a generic threat due to our patent.
5           Based on the acceptance of Ovcon Chew to date,
6  in its limited introduction, and our expectation of
7  acceptance going forward, we expect to be able to
8  transition at least one-third of our Ovcon 35 market
9  share in sales to Ovcon Chew over the next 15 months.
10          Assuming that level of acceptance and a 50
11 percent impact on the sales of the old Ovcon 35 product,
12 we estimate that the impact from Barr's anticipated
13 October introduction of a generic Ovcon 35 will be in the
14 range of $25 to $30 million in net sales in 2007 --
15 excuse me, 2007, relative to a brand switch in the
16 absence of a generic entrant.
17          And that concludes what I have.
18          MS. HARA:  So, thank you very much.  That
19 concludes the company's comments for today.
20          MR. BOISSONNEAULT:  Thanks a lot for
21 participating on the call.
22          MALE OPERATOR:  Ladies and gentlemen, this
23 concludes today's teleconference.  You may disconnect at
24 any time.
25          **(Whereupon, the conference call was concluded.)**

10

1         FEMALE RECORDING:  Thank you for calling the
2 Digital Replay Service.
3         **(The call was concluded.)**
4         MS. WILD:  This is Rebecca Wild.  The time is
5 approximately 12:06 p.m.  The date is September 27th,
6 2006, and I am going to end this recording.
7         **(The recording was concluded.)**

1    C E R T I F I C A T I O N   O F   T Y P I S T

2    MATTER NUMBER: 0410034

3    CASE TITLE: FTC, et al. v. WARNER CHILCOTT HOLDINGS

4    COMPANY III, LTD., ET AL.

5    TAPING DATE: SEPTEMBER 27, 2006

6    TRANSCRIPTION DATE: OCTOBER 17, 2006

8    I HEREBY CERTIFY that the transcript contained
9    herein is a full and accurate transcript of the tapes
10   transcribed by me on the above cause before the FEDERAL
11   TRADE COMMISSION to the best of my knowledge and belief.

13   DATED: OCTOBER 17, 2006

16   ELIZABETH M. FARRELL

18   C E R T I F I C A T I O N   O F   P R O O F R E A D E R

20   I HEREBY CERTIFY that I proofread the transcript for
21   accuracy in spelling, hyphenation, punctuation and
22   format.

25   SARA J. VANCE