IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 1:05CV02179<br><br>Judge Colleen Kollar-Kotelly |

## BARR PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

The sole issue in this lawsuit has been resolved. The FTC concedes this, but refuses to admit what is equally clear — that there is no longer any Article III "case or controversy" that supports the continued subject-matter jurisdiction of this Court.

This case is moot and must be dismissed for at least three reasons.

*First*, Warner Chilcott has publicly and irrevocably waived the exclusivity provision that formed the sole basis for the FTC's action. This Court has now approved a settlement agreement and entered a stipulated Order that bars Warner Chilcott from entering into any new agreement of this type with Barr (or any other company). In reliance on the Warner Chilcott waiver, Barr has now launched a generic version of Ovcon — a pro-competitive action that goes well-beyond any relief the FTC has sought or could seek, as the FTC clearly could not have sought a mandatory injunction forcing Barr to enter the market. Because the dispute that promoted the

suit is over, and market forces have now driven greater competition than the FTC sought in its Complaint, the action is moot and must be dismissed.

***Second***, and relatedly, the "voluntary cessation" exception to the mootness doctrine does not apply. Under the applicable legal standard, it is "absolutely clear" that the allegedly wrongful conduct that is the subject of the FTC's Complaint ***cannot*** reasonably be expected to recur. Not only is Warner Chilcott prohibited by law from entering into this type of agreement with Barr, the economic realities of Barr's launch of generic Ovcon make it unreasonable to conclude that Barr would ever agree with Warner Chilcott to refrain from selling generic Ovcon.

***Finally***, the FTC's vague and overreaching request that this Court enjoin Defendants from engaging in "similar and related conduct" does not support continuation of this action. A request for overly-broad relief does not create subject-matter jurisdiction where, as here, it does not otherwise exist. The request for an injunction against "related" agreements with other firms is overbroad because it has nothing to do with the conduct challenged in the Complaint, and because the FTC has offered no evidence that Barr is contemplating or likely to enter "similar" arrangements with any other party. In any event, virtually all such business deals Barr might enter involving a drug product for which it was the "ANDA first-filer" will be quickly brought to the FTC's attention under the Medicare Improvements Act notification requirements or the Hart-Scott-Rodino notification scheme. Under these circumstances, the FTC's request for additional, speculative relief cannot provide a basis for this Court's continued exercise of subject-matter jurisdiction.

Because there is no longer any "live" case or controversy that would allow this Court to maintain its jurisdiction over this action, this case is moot and must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

I. **WARNER CHILCOTT'S WAIVER OF THE CHALLENGED EXCLUSIVITY PROVISION MOOTED THE FTC ACTION.**

The FTC's Complaint is premised on a single issue — whether the exclusivity provision of Defendants' License and Supply Agreement violated Section 5 of the FTC Act.[1] (First Am. Compl. at Section VIII; *see also* Notice of [FTC's] Withdrawal of Its Motion for Preliminary Injunction Dated September 25, 2006 ("This litigation challenges the exclusivity provision of a March 24, 2004 agreement between defendants . . . .").) With Warner Chilcott's decision to publicly, permanently, and irrevocably waive the exclusivity provisions of its Agreement with Barr — and this Court's entry of a stipulated Order requiring that it do so — that issue has now been resolved. The FTC concedes this point.[2] (*See* FTC's Opp'n at 1 ("Warner Chilcott terminated its unlawful non-compete agreement with Barr . . . .").) Relying on this waiver, Barr has now launched its generic version of Ovcon.[3]

---

[1] According to the FTC's November 7, 2005 press release announcing the filing of the FTC's Complaint, the purpose of this lawsuit is to "obtain permanent injunctive relief to undo the provision in the Warner Chilcott-Barr agreement prohibiting Barr from selling a generic version of Ovcon, with the goal of facilitating the prompt introduction of a generic version of Ovcon into the United States." Press Release, FTC, *FTC Sues to Stop Anticompetitive Agreement in U.S. Drug Industry*, (Nov. 7, 2005), http://www.ftc.gov/opa/2005/11/galenbarr.htm.

[2] According to the FTC's October 23, 2006 press release trumpeting its settlement with Warner Chilcott:

> The Commission's announcement [of the FTC-Warner Chilcott settlement agreement] came shortly after Warner Chilcott abandoned — under threat of a preliminary injunction sought by the FTC -- the portion of its agreement with Barr Laboratories that prevented Barr from bringing a generic version of the drug to the market. The next day, Barr announced that it would begin selling generic Ovcon tablets in the United States. As a result of the FTC's actions, Barr's generic drug came on the market this week, and, for the first time, a lower-cost generic version of Ovcon now is available to consumers.

Press Release, FTC, *Consumers Win as FTC Action Results in Generic Ovcon Launch*, (Oct. 23, 2006), http://www.ftc.gov/opa/2006/10/chilcott.htm.

[3] According to Barr's September 26, 2006 press release announcing Warner Chilcott's decision to waive the exclusivity provisions of its Agreement with Barr, "The waiver makes the license non-exclusive and, as a result, Barr Pharmaceuticals, Inc., intends to launch its generic version of OVCON 35 oral contraceptive in October 2006." Press Release, Barr, *Barr Announces Warner Chilcott Waives Exclusive License for OVCON(R) 35*,

(Continued...)

Article III's "case or controversy" requirement confers standing only on those who allege an "injury in fact" that is "concrete and particularized." *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[By injury in fact we mean] an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical'."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both real and immediate, not 'conjectural' or 'hypothetical.'"); *Nevada v. Nuclear Regulatory Comm'n*, No. 05-1350, 2006 WL 2828864, (D.C. Cir. Sept. 22, 2006) ("Because petitioner can point to no injury in fact, petitioner lacks Article III standing and the court lacks jurisdiction to grant relief.").

There is no longer any such particularized injury in fact in this case.

Because the dispute between the parties is no longer "live," and because any decision in this case "will neither presently affect the parties' rights [nor] have a more-than-speculative chance of affecting them in the future," this case is moot and must be dismissed. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002).

## II. THE "VOLUNTARY CESSATION" EXCEPTION TO THE MOOTNESS DOCTRINE DOES NOT APPLY.

Having conceded that no "live" controversy remains in this case, the FTC nonetheless argues that the "voluntary cessation" exception to the mootness doctrine provides this Court with a basis for subject-matter jurisdiction. It does not. The Supreme Court has consistently held that

---

(Sept. 26, 2006), http://phx.corporate-ir.net/phoenix.zhtml?c=60908&p=irol-newsArticle&ID=909303&highlighttt=.

a case shall be dismissed as moot where the defendant proves that it is "absolutely clear" that the allegedly "wrongful behavior could not reasonably be expected to recur."[4] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *see also United States v. W. T. Grant*, 345 U.S. 629, 633 (1953). Such is the case here.

The alleged violation at issue here cannot recur for a simple reason: this Court has approved and entered an Order approving the FTC's settlement with Warner Chilcott. On October 23, 2006, this Court approved a settlement agreement and entered an Order

**REDACTED**

(Final Order and

---

[4] The FTC cites three additional factors that, in its view, warrant finding that this case is not moot — this action's status as a government enforcement action, Barr's failure to disavow its allegedly wrongful conduct, and the nature and magnitude of harm to consumers that would allegedly result from any revival of Defendants' Agreement. (FTC's Opp'n at 3, 7, 9.) None of these factors, however, undermines the conclusion that this case is moot.

In evaluating the applicability of the voluntary cessation exception, the primary and overriding consideration is whether it is reasonable to expect that the allegedly wrongful behavior will recur:

> The Supreme Court's primary test [for the voluntary cessation exception] — "reasonably be expected to recur" — suggests an estimate of raw probabilities. At either end of the spectrum, this is probably the intended approach. If there is a high likelihood of recurrence, the case should not be deemed moot; if very low, mootness ought to follow.

*Adams v. Bowater*, 313 F.3d 611, 613-14 (1st Cir. 2002).

Only in a close case — which this is certainly not — should the factors raised by the FTC have any conceivable bearing on a court's determination of mootness. *Id.*

[5] (*See* Court Order, Oct. 23, 2006; *see also* Ex. A (Press Release, FTC, *Court Enters Final Order Settling FTC's Charges Against Warner Chilcott*, (Oct. 24, 2006), http://www.ftc.gov/opa/2006/10/chilcottorder.htm.)

Stipulated Permanent Injunction, Section III.)

**REDACTED**

Where, as here, allegedly wrongful conduct is prohibited as a matter of law, no reasonable expectation can exist that the conduct will recur. *See, e.g., County of Los Angeles v. Davis*, 440 U.S. 625 (1979) (no reasonable expectation that allegedly wrongful conduct would recur where that conduct was barred by a district court injunction); *Douglas v. Donovan*, 704 F.2d 1276 (D.C. Cir. 1983) (case mooted where settlement agreement made it "virtually impossible" for allegedly wrongful conduct to recur). Accordingly, the voluntary cessation exception does not apply here and this action must be dismissed as moot.[6]

This conclusion is further confirmed by current economic and market realities. On September 26, 2006, following Warner Chilcott's decision to permanently and irrevocably waive the exclusivity provisions of its Agreement with Barr, Barr publicly announced its plans to sell a generic version of Ovcon 35, and Barr is now marketing and shipping this generic Ovcon 35 to customers under the trade name "Balziva." Sales of Balziva began in mid-October 2006. In addition, while Barr is no longer receiving orders from Warner Chilcott for branded Ovcon 35,

**REDACTED**

---

[6] The Court's entry of a stipulated order barring recurrence of the allegedly wrongful conduct distinguishes this case from those relied upon by the FTC to support its claim that the voluntary cessation exception applies here. All of the cases cited by the FTC involve claims of mootness by defendants who voluntarily stopped their allegedly wrongful conduct but remained "free to return to [their] old ways." *See Friends of the Earth, Inc.*, 528 U.S. at 711 (no mootness where environmental tort defendant complied with relevant pollutant limits and closed pollutant-emitting facility, but retained pollutant discharge permit); *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203 ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes."); *W. T. Grant*, 345 U.S. at 633 ("Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot . . . .").

**REDACTED**  [7] (*See* Oct. 17, 2006 Deposition of B. Downey at 169-70 (Ex. B) (filed under seal); Oct. 18, 2006 Deposition of J. Negroni at 238-40 (Ex. C) (filed under seal).)  Thus, even apart from this Court's order, changes in real-world competition make it extremely unlikely that the Defendants would ever revive the challenged exclusivity provision.  Such an act would require Barr to pull Balziva from the market, thereby forfeiting its investment in marketing, distribution, and all potential profits.  Any such withdrawal would undoubtedly draw the ire of Barr's customers and patients and result in incalculable harm to Barr's goodwill and reputation.

These changes in market circumstances which make revival of the exclusivity provision economically infeasible further underscore why the voluntary cessation exception to the mootness doctrine does not apply here.  *See, e.g., SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 406-07 (1972) (where recurrence of allegedly wrongful conduct is a "matter of conjecture" given market circumstances, voluntary cessation exception does not apply); *Pub. Util. Comm'n of Cal. v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996) (where recurrence of the allegedly wrongful conduct is "economically infeasible under current market circumstances," voluntary cessation exception does not apply).  Accordingly, and for this reason as well, the case should be dismissed.

---

[7] In fact, it appears that Warner Chilcott no longer needs to rely on Barr as its exclusive supplier of Ovcon. On September 8, 2006, Warner Chilcott distributed a trade notice to its customers announcing that Ovcon 35 Fe — the trade name for a new chewable version of Ovcon 35 — would be marketed by Warner Chilcott in place of non-chewable Ovcon 35. Warner Chilcott manufactures Ovcon 35 Fe at its own facility in Puerto Rico. *See* Warner Chilcott, *Ovcon 35 Fe*, http://www.warnerchilcott.com/pdfs/pi/pi_ovcon_35_fe.pdf. Warner Chilcott therefore no longer needs an exclusive license and supply agreement for non-chewable Ovcon 35.

### III. THE FTC'S VAGUE REQUEST FOR EQUITABLE RELIEF TO BAR "SIMILAR AND RELATED CONDUCT" IS INSUFFICIENT TO SUPPORT THIS COURT'S JURISDICTION.

Finally, the Court should also reject the FTC's improper attempt to "boot-strap" its boiler-plate request that Barr be enjoined from "engaging in similar and related conduct" into the sole grounds for maintaining the suit. (FTC's Opp'n at 2.) Where, as here, there is no longer any case or controversy, the issue of whether some broader remedy might have been obtained had the case not been mooted is hypothetical and irrelevant. It is especially so in this case where there is no basis for any remedy that reaches beyond deals between Barr and Warner Chilcott.

The FTC places the cart before the horse in claiming this Court should base jurisdiction on the *remedy* requested rather than on an actual case or controversy. A vague, speculative allegation of possible future injury paired with a general request for equitable relief does not meet Article III's stringent requirements. *See Blue Cross & Blue Shield of Minn. v. GlaxoSmithKline PLC*, No. 05-910DWFAJB, 2006 WL 516784 (D. Minn. Jan. 30, 2006) (vague request for injunctive relief against speculative, future antitrust violations does not provide a basis for subject-matter jurisdiction); *see also DeFunis v. Odegaard*, 416 U.S. 312, 320 n.5 (1974) ("[S]peculative contingencies afford no basis for our passing on the substantive issues (the petitioner) would have us decide . . . in the absence of evidence that this is a prospect of immediacy and reality."); *United States v. Garde*, 848 F.2d 1307, 1309 n.5 (D.C. Cir. 1988) (where allegedly wrongful conduct was an isolated incident and there was no evidence suggesting the conduct would recur, fear of recurrence was speculative and unreasonable); *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1972) ("The law requires that courts closely tailor injunctions to the harm that they address."); *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 588 (8th Cir. 1991) (quoting *Int'l Salt Co. v. United States*, 332 U.S. 392,

400-01 (1947) ("[T]he district court is limited by the requirement that it 'model [its] judgment[] to fit the exigencies of the particular case.'"). [8]

The "other" relief requested by the FTC goes far beyond the alleged harm it sought to redress by filing this lawsuit. In fact, the FTC's desired injunction might broadly enjoin Barr from entering into many pro-competitive agreements related to its core business of manufacturing and marketing generic pharmaceuticals. Further, such broad relief is especially unnecessary where, as here, virtually all business deals Barr might hypothetically contemplate involving a drug product for which it is the "ANDA first-filer" will be brought to the FTC's attention under the Medicare Improvements Act filing requirements or the Hart-Scott-Rodino notification scheme. See FTC, Intro*ductory Guide I to the Premerger Notification Program*, (Jan. 2002), http://www.ftc.gov/bc/hsr/introguides/guide1.pdf; FTC, *Medicare Prescription Drug and Improvement Act Requires Drug Companies to File Certain Agreements with the [FTC] and the U.S. Department of Justice*, http://www.ftc.gov/os/20004/01/040106 pharmrules.pdf. For these reasons, an injunction request going beyond Barr's future agreements with Warner Chilcott — which are already addressed by the FTC-Warner Chilcott settlement — could not be justified even if the case was not moot, and certainly cannot provide a basis on which to revive a dispute that no longer exists.

---

[8] In a similar context, the Ninth Circuit rejected as overbroad an FTC cease and desist order targeted at a broad class of misconduct, rather than at a specific breach of law. *See Standard Oil Co. of Cal. v. FTC*, 577 F.2d 653 (9th Cir. 1978). In that case, the FTC barred Standard Oil from engaging in "*all* advertising which creates a misleading impression" for *all* of its products, even though the subject of the FTC's complaint was an advertising violation involving only a single product. *Id.* at 660-61 (emphasis added). This order, the Ninth Circuit concluded, was "exceptionally burdensome by reason of its breadth and generality," and could not stand as it was. *Id. Standard Oil* is readily analogous to the facts here, given that the FTC has sued Barr over an alleged antitrust violation involving a single product and now seeks equitable relief that would impact most, if not all, of Barr's products.

## CONCLUSION

For the foregoing reasons, the FTC's First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

Dated: October 30, 2006

                                            /s/ Karen N. Walker
                                        Karen N. Walker (D.C. Bar # 412137)
                                        Mark L. Kovner (D.C. Bar # 430431)
                                        Chong S. Park (D.C. Bar # 463050)
                                        KIRKLAND & ELLIS LLP
                                        655 Fifteenth Street, N.W.
                                        Washington, District of Columbia 20005
                                        (202) 879-5000
                                        (202) 879-5200 (fax)

                                        *Counsel for Barr Pharmaceuticals, Inc.*